PITMAN, J.
I,Clarissa Hector Hammond appeals the judgment of the juvenile court which ruled that the goal of the case plan, regarding three of her children who had been removed from her care, should be permanently changed from reunification to a primary goal of adoption. For the following reasons, we affirm.
FACTS
On June 3, 2015, the Department of Children and Family Services (“DCFS”) received a report of a fatality involving a five-year-old female, hereafter, B.B. Her mother, Appellant, reported to law enforcement that her child had fallen from a tree into the Ouachita River and that she had been unable to retrieve the child. When authorities arrived and took the child to the hospital, neither the child nor her mother was wet. Russell Flowers, the man with whom Appellant lived, and the father of Appellant’s youngest child, P.B., was performing cardiopulmonary resuscitation (“CPR”) on B.B. CPR was continued by EMS until they reached the hospital, but B.B. was never revived. Authorities who questioned Appellant and Flowers at the family home concluded that the facts, as conveyed by the parties, were inconsistent with the evidence.
B.B.’s autopsy revealed that she did not drown, but, instead, had died from blunt force trauma to the head and lower extremities, which appeared to have been inflicted by a belt. Flowers was charged with second degree murder of B.B. Subsequently, Appellant was also charged with second degree murder of her child. The charges against both are still pending.
| ^Appellant is the mother of three other children, N.B., age seven; I.B., age five; and P.B., age two. Her former husband, Nicholas Brister, is the father of N.B. and I.B. and also the father of B.B,
On July 6, 2015, Ashlee Green of the DCFS filed an affidavit in support of an instanter order which stated that the State had received a report of alleged neglect/lack of adequate supervision, death by abuse and bruises concerning B.B. and the allegation of lack of supervision of N.B., I.B. and P.B. The surviving three children had bruises and otherwise showed signs of abuse and neglect. The affiant stated that there was good cause to remove the children from the custody of the parent/caretaker pending the completion of the investigation and the filing of reports to the district attorney. The instanter order was issued, and the three chil *400 dren were placed in the temporary custody of DCFS.
A Court Appointed Special Advocate (“CASA”) was appointed to represent the children. At a hearing to continue custody with the DCFS, Flowers stipulated to custody being maintained without admitting to the allegations against him, as did Appellant and Nicholas Brister. The court found that remaining in DCFS custody was in the best interests of the children, and they were eventually adjudicated as children in need of care.
The three children were originally placed in separate foster homes; however, according to the record, two of the children are now placed together in one home. The primary goal of their case plans was reunification, with a secondary goal of adoption. DCFS prepared a case plan for Appellant, which included domains for parenting, housing, income, mental health, substance abuse, visitation and domestic violence, and she began complying with the plan.
| ^Approximately a year after the children were placed in foster care, DCFS issued a recommendation that a change be made in the goal of the case plan from reunification to adoption. A report was written by DCFS to the trial court on June 1, 2016, and by the CASA on June 3, 2016, in anticipation of a permanency hearing, which was held on July 14, 2016.
At the permanency hearing, Yernata Delmore, a case worker for DCFS, reviewed Appellant’s case plan and stated that, as to housing, Appellant had moved several times while the case was pending. After leaving Flowers’ home, she lived with her parents and then moved to another house in West Monroe as a roommate with Tammy Jo Hammond.
In November 2015, Appellant married Lindsay Hammond, who is the daughter of her former roommate Tammy Hammond. She did not reveal her marriage to the DCFS prior to her family team meeting on December 9, 2015. She and her wife moved to a three-bedroom, two-bath home that is located in a quiet neighborhood. The home has adequate food and utilities. Ms. Del-more testified that Appellant’s housing history caused the agency concern because it appears she is unstable and moves frequently. Also, her new wife has a drug history.
Ms. Delmore further testified that Appellant had undergone a psychological assessment with Dr. James Pinkston, who stated he could find no evidence of psychological impairment or maladaptive personality trait sufficient to preclude her from parenting her three young children. In November 2015, Appellant began treatment with Dr. Beatrice Tatum to address grief and loss issues associated with the death of her daughter, as well as the loss she experienced due to the removal of her surviving children from her care. She also began parenting and domestic violence treatment 14with Dr. Tatum, which is ongoing. Dr. Tatum has informed the DCFS that Appellant is cooperating with the case plan and is still undergoing counseling. She is making progress, but has not completed the program. Appellant has agreed to random drug screens, and each screen has been negative.
Ms. Delmore also testified that the DCFS amended Appellant’s case plan to include her new wife and stated that it was concerned with the wife’s extensive criminal history, which includes numerous drug charges, simple battery, issuing worthless checks, simple criminal damage to property, theft and probation violations. The wife was referred to parenting classes and agreed to drug screens, all of which have been negative. The DCFS also received documentation showing that the wife had *401 completed substance abuse outpatient counseling at New Day Recovery. Her mental health assessment showed that she did not need services at that time. Ms. Delmore stated that Appellant’s wife is financially stable, pays the rent on the home and earns sufficient money to support Appellant and her children
When questioned about the children and whether they were thriving in their foster homes, Ms. Delmore testified that, after the initial placement of the children in three separate homes, N.B. was eventually placed in the same foster home as P.B., and them foster parent has indicated that she would like to adopt them. LB.’s foster parents have also indicated that they would be willing to adopt her should she became available for adoption. Ms. Del-more stated that the children were flourishing in their foster homes, that the foster families were in touch with each other so that the children were able to spend time with their siblings and that “this is about the greatest case as far as placement and matching.”
|BWhen asked about the paramount obstacle preventing reunification and in favor of adoption as a permanent plan, Ms. Del-more responded that the criminal charge of second degree murder against Appellant was still pending and her life appeared to be unstable. She also expressed concern about Appellant’s wife’s extensive criminal history. She stated that she was uncertain if Appellant had informed Dr. Pinkston, who had performed the mental health evaluation, that she had prescriptions for Klo-nopin, Trazodone and Cymbalta. She also discussed with the court a medical report for Appellant’s hospitalization in April 2016 that showed she was also taking OxyCon-tin.
The juvenile court ruled that the permanent case plan should be changed from reunification to a primary goal of adoption. It. noted that the CASA report, dated June 3,2016, is detailed and that it corroborated Ms. Delmore’s testimony concerning how well the children were doing in their current placement. It stated that the focus of the hearing was to determine the most appropriate permanent plan for the children, considering their health and safety to be paramount. It also stated that, “This is .not about what the parents want.... It is all about the children and what is in their best interest.” While it recognized Appellant’s participation and cooperation in her case plan, it noted the one thing she had not done was to resolve the criminal charge against her of second degree murder. It also stated that that “one thing” is a major thing and the reason the children came into care.
The juvenile court further stated that it needed to see significant measurable progress, but Appellant’s life “is still pretty chaotic.” She has gone from one relationship to another and has not been in a stable relationship for more than six months. She is still working on issues with |J>r. Tatum and there is no timetable for when that program will be completed. Significant issues related to her mental health, domestic violence and parenting still remain, and she is now married to someone with a history of substance abuse. It also stated that questions remain regarding Appellant’s medical history and use of medications and, particularly, whether OxyContin was prescribed for her.
The juvenile court also found that the DCFS’s evidence was overwhelming and that the children were flourishing in their foster homes in a way they were not at the time they came into custody. For those reasons, it found that the permanent plan most appropriate for them is the goal of adoption.
*402 Appellant filed this appeal, claiming that she has substantially completed her case plan and that it is manifestly erroneous for the juvenile court to change the plan’s goal from reunification to adoption.
DISCUSSION
Appellant argues that La. Ch. C. art. 702 requires the trial court to determine the permanent plan for the child that is the most appropriate and in the best interest of the child. The only two options are reunification with the parent and adoption. In order for reunification to remain the permanent plan, the parent must be complying with the case plan and making significant measurable progress toward achieving its goals and correcting the conditions requiring the child to be in care. A reasonable expectation of reformation is found to exist if the parent has cooperated with the state officials and has shown improvement, although not all of the problems that exist have been eliminated.
[ 7Appellant argues that she has done everything the DCFS has asked of her. She reiterates all the progress she has made and claims to have a stable home with a stable spouse and notes that Dr. Pinkston found she was capable of parenting her children. She asserts that Dr. Tatum was also positive and opined that she was progressing in that treatment. She also argues that there was no evidence to show that she had tried to hide any drug use from any of her treating physicians. She contends that her wife should not be considered a negative factor since she also was complying with the case plan prepared for her by the DCFS.
Appellant challenges the juvenile court’s ruling on the basis that the sole issue for consideration was that the criminal charge of second degree murder is still pending. She contends that she will be acquitted of that charge and that it was error for the juvenile court to have changed the plan goal from reunification to adoption without allowing her the time necessary to resolve this issue. Because she has completed the majority of the case plan, she claims she has made significant measurable progress toward achieving its goals. Therefore, she argues, the juvenile court’s judgment is in error and should be reversed.
The DCFS argues that the issue in these cases is always the best interest of the child and the standard for making that determination is found in La. Ch. C. art. 702, which states that the child’s health and safety will be the paramount concern in the determination of a permanent plan. More than simply protecting parental rights, the judicial system is required to protect the child’s rights to thrive and survive.
The DCFS also argues that, in a manifest error review, it is important that the appellate court not substitute its own opinion when it is the juvenile |scourt that is in the unique position to see and hear the witnesses as they testify. If the juvenile court’s findings are reasonable in light of the record reviewed in its entirety, the appellate court may not reverse, even if it is convinced that, had it been sitting as the trier of fact, it would have weighed the evidence differently.
The DCFS further argues that the juvenile court had realistic concerns with the progress Appellant had made in the year since her child’s death and the fact that the charge of second degree murder against her is still pending. For these reasons, it argues that the juvenile court’s judgment should be affirmed.
La. Ch. C. art. 702 concerns permanency hearings and states in pertinent part as follows:
B. The court shall conduct a permanency hearing within nine months after the *403 disposition hearing if the child was removed prior to disposition or within twelve months if the child was removed at disposition, but in no case more than twelve months after the removal. Permanency reviews shall continue to be held at least once every twelve months thereafter until the child is permanently placed or earlier upon motion of a party for good cause shown or on the court’s own motion.
C. The court shall determine the permanent plan for the child that is most appropriate and in the best interest of the child in accordance with the following priorities of placement:
(1) Return the child to the legal custody of the parents within a specified time period consistent with the child’s age and need for a safe and permanent home. In order for reunification to remain as the permanent plan for the child, the parent must be complying with the case plan and making significant measurable progress toward achieving its goals and correcting the conditions requiring the child to be in care.
(2) Adoption.
[[Image here]]
|flE. Except as otherwise provided in Article 672.1, the court shall determine whether the department has made reasonable efforts to reunify the parent and child or to finalize the child’s placement in an alternative safe and permanent home in accordance with the child’s permanent plan. The child’s health and safety will be the paramount concern in the court’s determination of the permanent plan.
The juvenile court is required to determine the permanent plan for the child that is most appropriate and in the best interest of the child. La. Ch. C. art. 702(C). Two placement priorities include reunification, or the return of the child to the legal custody of the parents within a specified time period consistent with the child’s age and need for a safe and permanent home, and adoption. In order for reunification to remain the permanent plan for the child, the parent must be complying with the ease plan and making significant measurable progress toward achieving its goals and correcting the conditions requiring the child to be in care. La. Ch. C. art. 702(C)(1); State in Interest of P.B., 49,668 (La.App. 2 Cir. 12/17/14), 154 So.3d 806. The child’s health and safety is the paramount concern in the court’s determination. La. Ch. C. art. 702(E); State in Interest of P.B., supra. More than simply protecting parental rights, our judicial system is required to protect the children’s rights to thrive and survive. State in the Interest of S.M., 98-0922 (La. 10/20/98), 719 So.2d 445.
To reverse a juvenile court’s permanency plan determination, an appellate court must find from the record that the juvenile court’s finding is clearly wrong or manifestly erroneous. State in Interest of P.B., supra; State, ex rel. H.M. v. T.M., 44,446 (La.App. 2 Cir. 5/6/09), 12 So.3d 409; State ex rel. S.D. v. D.M.D.B., 36,406 (La.App. 2 Cir. 8/14/02), 823 So.2d 1113; State ex rel. J.B. v. J.B., Jr., 35,846 (La. App. 2 Cir. 2/27/02), 811 So.2d 179.
In State in Interest of P.F., 50,931 (La. App. 2 Cir. 6/22/16), 197 So.3d 745, this court stated as follows:
In a manifest error review, it is important that the appellate court not substitute its own opinion when it is the juvenile court that is in the unique position to see and hear the witnesses as they testify. [State in the Interest of N.C., 50,446 (La.App. 2 Cir. 11/18/15), 184 So.3d 760)]; [State ex rel. L.M.,] 46,078 (La.App. 2 Cir. 1/26/11), 57 So.3d 518. *404 Where there is conflicting testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even when the appellate court may feel that its own evaluations and inferences are as reasonable as those of the juvenile court. Id. If the juvenile court’s findings are reasonable in light of the record reviewed in its entirety, the appellate court may not reverse, even though convinced that, had it been sitting as the trier of fact, it would have weighed the evidence differently. Id.
Although we concede that Appellant has made some progress in the case plan con-fected for her by the DCFS, we find no manifest error in the ruling of the juvenile court in changing the goal of the case plan from reunification to adoption. The best interest of the children is the paramount consideration; and, as the juvenile court indicated, the parent’s desires are not the court’s main concern.
Ms. Delmore’s testimony affirmed that the DCFS was still concerned about Appellant’s unstable life since she had moved several times after the death of her child. After leaving Flowers, who is also charged with the second degree murder of her child, she married another person who had an extensive criminal history. Although her wife appears to be financially stable and can, according to Ms. Delmore, afford to support Appellant and her children, her criminal history remains a concern in the issue of the children’s safety.
| ^Although Appellant has been attending counseling with Dr. Tatum, the doctor has informed the DCFS that she has not completed her case plan and that she still needs work in the areas of grief counseling, parenting and domestic violence counseling. Dr. Tatum has recommended family counseling “in the future,” but did not specify when in the future that counseling would be advisable. The children must also be ready for family counseling; as of the time of the hearing, they were not.
Of most importance, Appellant still has a second degree murder charge pending against her. Despite her claim that she is certain she will be acquitted, that remains to be seen. In the meanwhile, her children have been in foster care since July 2015, and they are thriving in that situation. In fact, both the foster mother of N.B. and P.B., and the foster parents of I.B., have indicated that they would like to adopt the children if that becomes a possibility. Ms. Delmore informed the juvenile court that she has never been more satisfied with child placements than in this case and that all of the children’s needs are being met.
Considering the children’s health and safety as the paramount concerns in its determination of the permanent plan, the juvenile court found it was in the best interest of the children to change the goal of the plan from reunification to adoption. Based on the foregoing facts, we find no manifest error in that judgment.
CONCLUSION
For the reasons stated herein, we affirm the decision of the juvenile court in favor of the Department of Children and Family Services, and against Clarissa H. Hammond, changing the permanent case plan goal in this |12matter from reunification with the parents to adoption. Costs in this court are assessed to Clarissa H. Hammond.
AFFIRM.