COX, J.
Appellant, Renatta Phillips Jones ("Jones"), appeals a judgment from the Fourth Judicial District Court, Parish of Ouachita, State of Louisiana, wherein the trial court found she had not successfully completed her case plan and changed the goal from reunification to adoption, in accordance with the best interest of the child. Jones contends that the trial court erred in ruling that she had not completed her case plan and ignoring the plain language of La. Ch. C. art. 702(C). She requests that the goal be changed back to reunification. For the following reasons, we affirm the ruling of the trial court.
FACTS
On May 18, 2015, the Department of Children and Family Services ("DCFS") received a report of a drug-affected newborn; Jones and her newborn son had tested positive for cocaine. DCFS contacted Jones at St. Francis Medical Center in Monroe, where she admitted to using cocaine two weeks prior to giving birth and smoking marijuana 30 days prior to going into labor. The father of the child, Eduardo Montalvo ("Montalvo"), was incarcerated at the time of his son's birth due to the violation of a protective order on Jones.
DCFS requested an instanter order for the removal of the child from the parents'
*172 custody. The order was granted, and the child entered the State's temporary custody on May 27, 2015.[1] The following day, a Court Appointed Special Advocate ("CASA") was assigned to represent the best interest of the child.
A continued custody hearing was held on May 28, 2015, and the parents stipulated to DCFS maintaining custody of the child, without admitting to the allegations set forth in the instanter order. The trial court approved the stipulation, and a case plan was put into place for both parents. The case plan was approved by the trial court on August 10, 2015, along with increased supervised visitation.
Martha Tippett, the CASA Volunteer, submitted her first report to the trial court on November 5, 2015. She recommended that the child remain in the State's care until Jones had established a longer record of sobriety and Montalvo had completed the Batterer's Intervention Program with positive results. The recommendation was based on Jones' long history of neglect and drug abuse and Montalvo's history of alcohol and domestic violence. Tippett reported that Jones was working her case plan, attending visits with the child, and living with Montalvo in a small trailer. Tippett stated that although the couple had everything necessary to care for the child, she was concerned about the size of the home for two adults and a child. At this time, Jones' urine drug screens were negative.
A second continued custody hearing was held on November 9, 2015. Takesha DeBurr, an employee of DCFS, testified that both parents were doing well on their case plans; however, there was still concern about their extensive history with the agency. She stated that they requested a hair sample from Jones, but she declined due to religious reasons.[2] The trial court requested a hair sample before a transition to unsupervised visitation would be approved.
A review hearing was held on January 11, 2016. CASA recommended that supervised visits in the home continue and the child remain in the State's care. Jones' results from hair follicle and urine drug screens were negative. The trial court suggested that both parents attend Celebrate Recovery at least once a week.
On May 23, 2016, an initial permanency hearing was held. CASA maintained their previous recommendation, noting that Montalvo had tested positive for cocaine. CASA additionally reported that Jones had begun working at Bancroft Corporation in March. The trial court stated that Jones appeared to be on the right path, but was concerned about Montalvo's substance abuse, as well as the size of their home. The goal of reunification was extended.
On November 4, 2016, CASA's report recommended the goal be changed from reunification to adoption due to Montalvo's continued use of alcohol. CASA was also concerned that Jones and Montalvo continued to live together. DCFS agreed with CASA's recommendation due to noncompliance with the case plan based on issues dealing with substance abuse and "not being forthcoming [about] life situations." DCFS noted that Jones was currently on medical leave due to a work-related injury; Jones tested positive for opiates; and, Montalvo received a DWI.
*173 A review hearing was held on November 28, 2016, and Takesha DeBurr testified that the parties had not been honest about their current living situation. The couple had allegedly stated that they separated after Montalvo's DWI, but CASA reported seeing his vehicle at the home on several occasions. It was also reported that Jones was with Montalvo when he received his DWI, which raised concerns for the child's safety. DeBurr stated that Jones was not attending Celebrate Recovery or AA due to her work schedule. The child's attorney stated that he was concerned for the child's wellbeing, but could not concur with CASA or DCFS as the case was not in a procedural posture to change the goal at that time. The trial court agreed and a permanency hearing was set.
On May 22, 2017, DCFS sent a follow-up report to the trial court. The report stated that Jones was released from her job with Bancroft due to her injury; however, she was now working with Mike Glenn painting homes and businesses. Montalvo, who was employed with James Machine, had also suffered an injury and had been unable to work for the past three months. As of April 19, 2017, Jones tested positive for opiates and codeine. Again, DCFS recommended that the goal be changed to adoption. CASA agreed with the recommendation, noting that the child had been in foster care for two years, and the drinking and domestic problems were still existent in the home.
In a report dated July 21, 2017, DCFS recommended that the goal remain reunification, and the child begin transitioning into the parents' home. Jones had provided documentation of the prescribed medication for her back injury that contained opiates and codeine. DCFS reported that Jones and Montalvo had completed a significant portion of their case plan. CASA, on the other hand, still believed the goal should be changed to adoption. Although Jones and Montalvo had reportedly worked their case plans and completed the necessary programs, there was still continued drug and alcohol use in the home. The parents had attended AA, but the sign-in sheets were sporadic and neither parent had a sponsor until April or May of 2017.
A permanency hearing took place on July 24, 2017, before Judge Marchman. Takesha DeBurr was the first to testify. At the outset, DeBurr testified that the agency asked Jones to complete classes in parenting, mental health assessment, domestic violence, substance abuse assessment, and to maintain income and stable housing. DeBurr testified that Jones completed her classes and was still taking continuing classes, such as substance abuse after care and family and marriage counseling. DeBurr stated that Jones' last positive drug screen was in May, but she was able to provide medical documentation for her prescription; Montalvo's last positive drug screen was over a year ago. She recommended that the goal remain reunification.
On cross-examination, DeBurr testified that both parents had been attending AA/NA about three times per week. She stated that only Jones was working at the time because Montalvo was injured, but her income was sufficient to support the family. Although the interior of the home was safe for the child, DeBurr expressed that the front porch and yard were not safe. DeBurr communicated that both parties were taking prescription medications for their injuries. She also pointed out that Montalvo had a change of plea scheduled for his DWI in September, but she was unaware whether he was changing it from not guilty to guilty. She noted that Dr. Hanser, with whom Montalvo completed the Batterer's Intervention Program, reported that the couple had numerous challenges which could serve as triggers for *174 potential abuse in the future. Finally, DeBurr affirmed that she had received reports that Jones had picked up the child for visits without the knowledge of the monitor and left the child with other people while she gambled.
Jones testified next. She stated she makes $12/hour painting houses for Mike Glenn; she works anywhere between 30 and 40 hours per week. She testified that James Machine was holding Montalvo's job for him while he was injured, and he made $20/hour when working. Jones said she was previously injured on November 1, 2016, while working at Bancroft Corporation. She testified that she began seeing Dr. Douglas Brown, who diagnosed her with spondylosis, spinal stenosis, degenerative disc disease, and bulging discs on sciatic nerves. She was prescribed Tylenol 3 with codeine. Jones stated she also goes to another doctor for a different type of medical condition.
On cross-examination, Jones testified that Montalvo had originally entered a not guilty plea to his DWI charge. She stated she continues to take pain medication for her back, but her injury is not so severe that it keeps her from working.
Upon examination by the trial court, Jones asserted that she only takes the Tylenol 3 as needed. She stated that the couple was not attending Celebrate Recovery because they did not have an elevator, and Montalvo was unable to climb the stairs due to his injury.
The trial court found that the parents' compliance with their case plan was unsatisfactory. It stated that Montalvo's pending DWI was a problem, as well as the fact that Jones was in the vehicle when it occurred. The trial court noted that there were still things that had not been completed, but the biggest problem was that the child had been in the State's custody for over two years. Although progress had been made, the trial court was still concerned about the couple's history of substance abuse and the lack of stability over the years. The trial court found that continuing the goal of reunification for another 90 days was in the best interest of the child. She informed both parties that this 90-day extension was all they would receive.
The final permanency hearing took place on October 30, 2017, before Judge Marchman. Takesha DeBurr testified that DCFS's recommendation remained reunification, with a slow transition into the family home. She stated that although Montalvo had previously tested positive for illegal drugs, he had a prescription for them. She also stated he was attending AA meetings at least once a week.
On cross-examination, DeBurr affirmed that Montalvo had tested positive for oxymorphone on October 13, 2017, but stated he was weaning off of the drug after surgery and was no longer taking the drug. It was also noted that Montalvo received a 7-day prescription for Percocet on February 28, 2017, but was still seeing the doctor to receive the medication.
Upon examination by the trial court, DeBurr stated that Montalvo does not have a current prescription for opiates, but had a positive hair test for the drug on October 13, 2017; he could not provide an explanation. She testified that Jones had only provided two AA meeting slips for the month of October, and Montalvo had not provided any slips for AA meetings.
Jones was the last to testify. She stated that she continued to suffer back and leg pain as a result of her work injury and a car accident, and was prescribed hydrocodone and Flexeril. Additionally, injections she received in her back caused nerve damage, and she takes gabapentin every day.
*175 In August 2017, Jones began experiencing severe chest pains and passed out. She was rushed to the emergency room and admitted to the hospital for one week, where she received morphine for the pain. Jones described her heart condition as super ventricular tachycardia, where her "heart goes up over [165 beats per minute] and I pass out." Her other symptoms include nausea, heat flush, and weakness. Jones stated that she had a heart catheter, but something was wrong with the ablation machine so she had to reschedule the appointment for the palpitation treatment.
With regard to the gap in the AA/NA sheets, Jones testified that she had misplaced several of her sheets. She also noted that she was in the hospital for two weeks. She stated she and Montalvo attend Celebrate Recovery every Friday night.
On cross-examination, Jones discussed Montalvo's injury and medication. She stated he broke his heel in February or March 2017 and had surgery in April. He was prescribed hydrocodone, which was not strong enough, so he was switched to oxycodone. She believed he stopped taking the medication in July. At this time, he had returned to work.
Jones asserted that she continues to take 10 milligrams of hydrocodone once or twice a day, if needed. She additionally takes Prozac and Vistaril as needed. She stated she was not currently taking anything for her heart condition, although she experiences her symptoms around once a week. Jones clarified that her pain and symptoms do not affect her work, as she does not lift anything heavy; her doctor told her she is not supposed to lift more than 20 pounds.
The trial court noted that the evidence was contradictory as to what procedures and medication were prescribed. Although the court believed the parents had completed a great deal of their case plan, the judge ultimately found it had not been completed and changed the goal from reunification to adoption. The trial court pointed out there were still issues with Montalvo's pending DWI, Jones' health concerns, and both parent's use of narcotic pain medication. Due to the fact that the child had been in custody for nearly three years, the judge believed that a permanent plan of adoption was the most appropriate and least restrictive under the circumstances, and also in the child's best interest. Jones appealed.
DISCUSSION
In her first assignment of error, Jones argues that the trial court committed manifest error when it ruled that she had not completed her case plan.
In order to reverse a trial court's permanency plan determination, an appellate court must find from the record that the trial court's finding is clearly wrong or manifestly erroneous. State in Int. of N.B., 51,374 (La. App. 2 Cir. 2/15/17), 215 So.3d 398. To reverse a fact-finder's determination under the manifest error standard, an appellate court must engage in a two-part inquiry: (1) the court must find from the record that a reasonable factual basis does not exist for the finding of the trier of fact, and (2) the court must further determine that the record establishes a finding that is clearly wrong. Middlebrooks v. City of Bastrop , 51,073 (La. App. 2 Cir. 1/11/17), 211 So.3d 1231, writ denied sub nom. Middlebrooks o/b/o Middlebrooks v. City of Bastrop , 2017-0268 (La. 5/1/17), 219 So.3d 331.
Where there is conflicting testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review. If the court's findings are reasonable in light of *176 the record reviewed in its entirety, the appellate court may not reverse, even though convinced that, had it been sitting as the trier of fact, it would have weighed the evidence differently. State in Int. of E.M. , 51,511 (La. App. 2 Cir. 6/2/17), 224 So.3d 1122.
The health, safety, and best interests of the child are the paramount concerns in all child in need of care proceedings. State in Int. of N.B. , supra . Mere cooperation by a parent is not the sole focus of a permanency plan. The court must assess whether the parent has exhibited significant improvement in the particulars that caused the State to remove the child from the parent's care. Stability in the home environment and relationships are considerations in the permanency plan determination. A parent who asserts an intention to exercise his or her parental rights and responsibilities must take some action in furtherance of the intention to avoid having those rights terminated. State in Int. of P.B. , 49,668 (La. App. 2 Cir. 12/17/14), 154 So.3d 806.
Lack of parental compliance with a case plan may be evidenced by one or more of the following: (1) the parent's failure to attend court-approved scheduled visitations with the child; (2) the parent's failure to communicate with the child; (3) the parent's failure to keep the department apprised of the parent's whereabouts and significant changes affecting the parent's ability to comply with the case plan for services; (4) the parent's failure to contribute to the costs of the child's foster care, if ordered to do so by the court when approving the case plan; (5) the parent's repeated failure to comply with the required program of treatment and rehabilitation services provided in the case plan; (6) the parent's lack of substantial improvement in redressing the problems preventing reunification; and, (7) the persistence of conditions that led to removal or similar potentially harmful conditions. La. Ch. C. art. 1036(C).
It is clear from the record that the trial did not commit manifest error in ruling that Jones had not completed her case plan. Although both parents successfully completed a large portion of their case plans, there were still issues that remained unresolved. Montalvo's pending DWI is a large concern as it is his second DWI offense and leaves the Court unsure whether or not he will serve time in jail. With Jones' looming health issues, it would be worrisome if the child were left alone in her care and she were to experience a medical emergency. Additionally, Montalvo's continued use of alcohol and pain medication is unsettling.
With regards to Jones' own pain medication usage, this Court believes that the trial court correctly noted that there appears to be some drug-seeking behavior. While she did provide documentation for her medications, she continued to take these medications long after her injuries. She also went to different doctors, which indicates drug-seeking behavior. As Jones' substance abuse was the initial cause that led to the child being removed from her care, this is worrisome.
Furthermore, Jones' heart problems raise concern. If she is passing out and being rushed to the hospital once a week, this leaves the child to fend for himself, especially if the father receives jail time. Jones' back pain is also an issue since her doctor recommended she not lift more than 20 pounds. This recommendation will likely prevent her from being able to lift and carry the child.
Both parents also failed to comply with the required program of treatment and rehabilitation services provided in the case plan. The trial court recommended that *177 they attend Celebrate Recovery, which they did for only a short time. Jones stated they stopped attending due to Montalvo's injury because he was unable to climb the stairs. However, the trial court informed Jones that Celebrate Recovery was provided at more than one location. Both Jones and Montalvo still failed to attend. Moreover, the attendance at AA/NA meetings was sparse. Neither parent received a sponsor until April or May 2017. Their sparse sign-in sheets indicate that they were not attending.
Based on these factors, it is clear Jones did not successfully complete her case plan. Many issues remained unresolved, which raised concerns for the child's safety and well-being. Accordingly, the trial court did not commit manifest error in finding that Jones had not completed her case plan.
In her second assignment of error, Jones argues that the trial court committed manifest error by ignoring the plain language of La. Ch. C. art. 702(C), which reads:
The court shall determine the permanent plan for the child that is most appropriate and in the best interest of the child in accordance with the following priorities of placement:
(1) Return the child to the legal custody of the parents within a specified time period consistent with the child's age and need for a safe and permanent home. In order for reunification to remain as the permanent plan for the child, the parent must be complying with the case plan and making significant measurable progress toward achieving its goals and correcting the conditions requiring the child to be in care.
(2) Adoption.
In order for reunification to remain the permanent plan, Jones was required to comply with the case plan and make measurable progress toward achieving its goals. As stated above, Jones had not successfully completed her case plan. Therefore, reunification did not need to remain the permanent plan for the child in accordance with the child's age and need for a safe and permanent home. The trial court noted that the child had been in the State's care for almost three years. Under La. Ch. C. art. 702(C), the next placement option was adoption. Thus, the trial court did not ignore the plain language of this article, and it was correct in placing the child for adoption.
CONCLUSION
Based on the foregoing reasons, we affirm the ruling of the trial court. Jones had not successfully completed her case plan in over two years, as many issues concerning substance abuse, her health, and her relationship with Montalvo remained unresolved. All costs of this proceeding are to be paid by Appellant, Renatta Phillips Jones.
AFFIRMED.

Jones' parental rights have previously been terminated on three of her children, who were freed for adoption on October 27, 2014. Jones also has one child who is still in foster care with the goal of alternate permanent living arrangements.

Jones testified that she does not cut her hair due to her Pentecostal religion.