MOORE, J.
*940 The mother, KMF, appeals a judgment that terminated her parental rights to, and certified for adoption, her two minor children, JF and KF. For the reasons expressed, we affirm.
FACTUAL BACKGROUND
On February 1, 2016, the State Department of Children and Family Services ("DCFS") received a report that JF, a little boy born in May 2014, had a bruised and swollen face. JF's mother, KMF, and her boyfriend were the primary caregivers for JF and his baby sister, KF, born in September 2015, but they could not explain how JF got these injuries. KMF submitted to a urine drug screen that was positive for methamphetamine, amphetamine and marijuana, and DCFS found that she had a record of investigations, in 2005 (neglect) and 2011 (threats of harm) with respect to her five older children. DCFS therefore filed an instanter order, which the district court signed on February 2, placing JF and KF in state custody. They have been in state custody ever since.
At the adjudication hearing, in April 2016, KMF and the children's fathers stipulated that JF and KF were children in need of care. A Court Appointed Special Advocates ("CASA") report recommended leaving the children in foster care.
In May 2016, DCFS filed its first case plan, with the goal of reunification. The case plan outlined "action steps" for KMF, including such items as keeping DCFS informed of her whereabouts, having income adequate to meet her family's needs, showing an ability to maintain a safe and clean environment, taking domestic violence counseling at The Wellspring, and taking a substance abuse assessment and random drug screens.
However, in a July 2016 case report, DCFS advised the court that KMF had not been available for home visits, had missed 15 of 17 substance abuse sessions, and had not attended any domestic violence or parenting sessions. The review judgment, signed on July 21, 2016, maintained the prior adjudication, with the stated goal of reunification.
The next case report, in February 2017, asked the court to change the goal to adoption. DCFS advised that it had been unable to find KMF at her reported addresses until mid-December; she was unemployed; she was on probation for a 2014 drug conviction; a hair follicle sample taken in January 2017 tested positive for meth (although a urine sample taken the same day was negative); and she had finally begun domestic violence counseling at The Wellspring in late January. The permanency judgment, signed on February 9, *941 2017, gave KMF a "final" extension of 90 days to meet the goal of reunification. The court specifically found that KMF had not cooperated with DCFS, not participated in parenting classes, not completed substance abuse treatment and domestic violence classes, and not obtained income and adequate housing.
DCFS's next case report, in May 2017, again recommended changing the goal to adoption: JF, the little boy, was having serious behavioral problems, but his foster parents were taking him to therapy for ADHD, and he was living with separate foster parents from his sister; KMF had missed most of her scheduled visits with JF and KF between February 2016 and January 2017 (yet she had improved since then); she had dropped out of the drug rehab facility, saying she could "do it on her own"; she moved many times, and DCFS had not been able to visit her latest address, in West Monroe. The review judgment, signed on May 15, 2017, changed the goal to adoption. The court specifically found that KMF had not participated in parenting classes, not completed substance abuse treatment, and not obtained adequate housing.
On July 3, 2017, DCFS filed the instant petition, for involuntary termination of parental rights and certification for adoption. It quoted KMF's case plan, recited the facts outlined above, and sought termination under La. Ch. C. art. 1037 B. The next case report recommended keeping the goal of adoption, and the review judgment, signed on August 23, 2017, adopted this recommendation. The district court specifically found that KMF had not completed all recommended parenting classes, and had not provided safe and clean housing.
A CASA report filed in mid-October concluded that "until very recently" KMF had not made any effort to obtain custody of JF and KF; she was likely to "lend the responsibility" of rearing them to their grandmother, who was already caring for four of KMF's older children; she did not show parenting skills and had no support system; and she was currently back in jail, for failing to pay probation fees. CASA predicted that if JF and KF were returned to KMF, they would have to be removed "very soon," an event that would be "traumatic" to them.
TRIAL EVIDENCE
The matter came for a termination hearing on November 2, 2017. Only two witnesses testified: Sonya Counsel, the CASA foster care worker who had handled the case, and KMF. Ms. Counsel reviewed KMF's case plan, item by item, showing that KMF had totally failed to complete some, was slow to comply with others, and had completed only one, the parenting classes. She added, however, that the instructor at River City Counseling had commented that during these classes, KMF mostly talked about one of her older children, not JF and KF, and the instructor had strongly advised additional sessions, which KMF had not attended. Ms. Counsel also testified that JF and KF appeared to be thriving with their respective foster parents, both of whom had asked to adopt the children.
KMF admitted that she was currently residing at Richland Detention Center, but was set for release in five weeks, and had secured a HUD house in West Monroe for herself and her kids. She said that "as far as I know," she would have a job when she got out, working at a car lot next to her grandmother's dress shop; her grandmother knew the man who owned the car lot. (KMF said she had worked several jobs, but in discovery she produced only two paystubs, from her grandmother's sewing shop, showing that she worked a total of 42½ hours in April 2017.) KMF added that *942 she "would like" to take more parenting classes, at River City, and maintained that even though she had dropped out of substance abuse counseling, at Rays of Sonshine, she was still in AA/NA, but alternating between three places (New Attitudes, Keep It Simple, Campus Club), and that was why none of them showed steady attendance. In the event she could not find work, she planned to put JF and KF "on my food stamps," and if the HUD house fell through, she would ask DCFS about getting Section 8 housing.
ACTION OF THE DISTRICT COURT
The court ruled from the bench that Ms. Counsel was credible, and that KMF had done some of the items on her case plan. Overwhelmingly, however, KMF had not complied, and had failed in "the really significant things": relapsing on the drug test, relying on HUD housing instead of stable housing, relying on a grandmother for "very nominal work," and not completing parenting and family services. The court therefore found failure to comply with the case plan, and no reasonable expectation of significant improvement. The court also found that JF and KF were doing exceedingly well with their respective foster parents, who were willing to adopt, and thus termination was in JF and KF's best interest. Judgment was rendered terminating KMF's parental rights and certifying JF and KF for adoption.[1]
KMF has appealed, urging that the court erred in finding that the state met its burden of proving grounds for termination under Ch. C. art. 1015 (5) and (6), and in finding that the evidence "overwhelmingly" indicated that termination was in the children's best interest.
APPLICABLE LAW
Termination of parental rights is governed by Title X of the Children's Code. Grounds for termination, as they apply to this case,[2] are stated in La. Ch. C. art. 1015 (5) :
(5) Unless sooner permitted by the court, at least one year has elapsed since a child was removed from the parent's custody pursuant to a court order; there has been no substantial parental compliance with a case plan for services which has been previously filed by the department and approved by the court as necessary for the safe return of the child; and despite earlier intervention, there is no reasonable expectation of significant improvement in the near future, considering the child's age and his need for a safe, stable, and permanent home.
Lack of parental compliance with a case plan is defined, in La. Ch. C. art. 1036 C, as one or more of the following:
(1) The parent's failure to attend court-approved scheduled visitations with the child.
(2) The parent's failure to communicate with the child.
(3) The parent's failure to keep the department apprised of the parent's whereabouts and significant changes affecting the parent's ability to comply with the case plan for services.
(4) The parent's failure to contribute to the costs of the child's foster care, if ordered to do so by the court when approving the case plan.
*943 (5) The parent's repeated failure to comply with the program of treatment and rehabilitation services provided in the case plan.
(6) The parent's lack of substantial improvement in redressing the problems preventing reunification.
(7) The persistence of conditions that led to removal or similar potentially harmful conditions.
Lack of reasonable expectation of significant improvement in the parent's conduct in the near future may be proved, under La. Ch. C. art. 1036 D, by any of the following:
(1) Any physical or mental illness, mental deficiency, substance abuse, or chemical dependency that renders the parent unable or incapable of exercising parental responsibilities without exposing the child to a substantial risk of serious harm, based upon expert opinion or based upon an established pattern of behavior.
(2) A pattern of repeated incarceration of the parent that has rendered the parent unable to care for the immediate and continuing physical or emotional needs of the child for extended periods of time.
(3) Any other condition or conduct that reasonably indicates that the parent is unable or unwilling to provide an adequate permanent home for the child, based upon expert opinion or based upon an established pattern of behavior.
The state must prove the elements of one or more of the enumerated grounds by clear and convincing evidence to sever the parental bond. La. Ch. C. art. 1035 A; State in Interest of HAS , 2010-1529 (La. 11/30/10), 52 So.3d 852. To meet this burden, the state need establish only one statutory ground for termination, but the court must also find that termination is in the best interest of the child. La. Ch. C. art. 1037 B; State in Interest of HAS , supra .
The appellate court cannot set aside a juvenile court's findings of fact in the absence of manifest error or unless those findings are clearly wrong. State in Interest of AT , 2006-0501 (La. 7/6/06), 936 So.2d 79. Under this standard, if there are two permissible views of the evidence, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. Rosell v. ESCO , 549 So.2d 840 (La. 1989) ; State in Interest of NB , 51,374 (La. App. 2 Cir. 2/15/17), 215 So.3d 398.
DISCUSSION
By her first assignment of error, KMF urges the trial court erred in finding that the state met its burden of proving grounds for termination under La. Ch. C. art. 1015 (5) and (6), as the evidence did not prove, clearly and convincingly, repeated failure to comply with the required program of treatment and rehabilitation services provided in the case plan, or lack of substantial improvement in redressing the problems preventing reunification. She argues that "if every domain [of the case plan] is completed," this proves a reasonable expectation of reformation, even if DCFS feels she did not start to comply until after the state filed for termination. Further, courts should find a reasonable expectation of reformation where the parent has cooperated with DCFS and has shown improvement, even though not all problem areas have been eliminated, State in Interest of LLZ , 620 So.2d 1309 (La. 1993) ; State in Interest of GA , 94-2227 (La. App. 1 Cir. 7/27/95), 664 So.2d 106. Also, the fact that a parent is incarcerated should mitigate the showing that she failed to maintain contact with the child, State in Interest of CAC , 2011-1315 (La. App. 4 Cir. 2/1/12), 85 So.3d 142, writ denied , *944 2012-0388 (La. 3/7/12), 83 So.3d 1048. Finally, she contends there is no "persistence of the conditions that brought the children into care." In support, she argues that she (1) always gave Ms. Counsel her current address(es); (2) participated in domestic battery counseling; (3) secured her current HUD house, for which HUD has guaranteed six months' rent payments; (4) worked at various jobs, most recently in the "family business," making $300 a week; (5) resumed substance abuse treatment at Rays of Sonshine in December 2016, steadily attended AA/NA, and tested negative in her most recent (August 2017) drug screen; (6) attended visits with JF and KF since December 2016; (7) attended all required parenting classes; and (8) brought the children gifts for her visits.
We find no merit in KMF's suggestion that she completed "every domain" of the case plan. Several areas were never completed, or only partially completed. She proved only about 42½ hours' work over the 21 months this case was pending; she relied on HUD housing, with only a six-month guarantee of occupancy, a patently unstable arrangement; she quit one drug program, completed a different one, but two months later admitted to DCFS that if tested, she would be positive for illegal drugs; she completed a parenting program, curiously without telling the instructor about JF and KF, and without attending the suggested additional classes. The district court was completely warranted in finding these to be serious shortcomings. We recognize that KMF cooperated with the agency by giving her current address(es), and showed affection for JF and KF by attending the visits for about six months. However, merely cooperating with DCFS will not overcome poor compliance with the case plan. State in Interest of SM , 98-0922 (La. 10/20/98), 719 So.2d 445. A finding that the mother loves the children will not overcome failure to follow the critical aspects of the case plan. State in Interest of JM , 2002-2089 (La. 1/28/03), 837 So.2d 1247. In short, this record supports the finding of lack of substantial compliance with the case plan and lack of reasonable expectation of reformation. This assignment of error lacks merit.
By her second assignment, KMF urges the trial court erred in finding that the evidence overwhelmingly indicated that termination was in the best interest of the children. Even though the interests of parent and child must be balanced, she shows that the parent's interest warrants "great deference and vigilant protection," State in Interest of JA , 99-2905 (La. 1/12/00), 752 So.2d 806. She urges there was no evidence that she actually harmed the children; she is in fact "substantially complying" with the case plan; the children have been "split up," and the respective foster parents are not promoting continued contact between them. She concludes that these facts refute the district court's finding of best interest.
We note, at the risk of redundancy, that the district court did not find substantial compliance with the case plan. KMF admitted that her five older children were all being raised by relatives, as a result of her own addiction to meth; her evidence as to employment and housing struck the district court as unpersuasive. Taken together, this evidence casts serious doubt on the claim that leaving the children with KMF would serve their best interest. The record also shows that the boy, JF, has significant behavioral deficits which his foster parents are treating with appreciable success. Both pairs of foster parents told DCFS they wished to adopt; this fact obviously serves the need for permanency. State in Interest of JM , supra . On this record, we perceive no manifest error in the district court's *945 finding of best interest. This assignment of error lacks merit.
CONCLUSION
For the reasons expressed, the judgment is affirmed. Costs are to be paid by KMF.
AFFIRMED .

The judgment, as well as the entire proceedings, also involved the children's biological and presumed fathers. These men's parental rights were also terminated, but they have not appealed.

La. Ch. C. art. 1015 (6), addressing a parent convicted and sentenced to incarceration of such duration that she would be unable to care for the child for an extended period of time, obviously does not apply to this case.