808 So.2d 558 (2001)
Connie ROUYEA
v.
Freddie Paul ROUYEA.
No. 2000 CA 2613.
Court of Appeal of Louisiana, First Circuit.
March 28, 2001.
*559 Eddie J. Lambert, Gonzales, Counsel for Defendant/Appellant, Freddie Paul Rouyea.
Connie Rouyea, Gonzales, Plaintiff/Appellee, in proper person.
Before: GONZALES, FOGG and PETTIGREW, JJ.
GONZALES, J.
In this appeal, Freddie Paul Rouyea challenges a protective order forbidding him from having contact with his wife, Connie Rouyea, and their minor son, Joseph.

FACTUAL AND PROCEDURAL BACKGROUND
Prior to June 20, 2000, Mr. and Mrs. Rouyea had separated and were living in different residences in Gonzales, Louisiana. At approximately 8:00 p.m. on the evening of June 20, 2000, Mr. Rouyea was invited to have dinner with Mrs. Rouyea and Joseph, who lived with his mother. Mr. Rouyea initially refused the invitation, but when Joseph persistently kept saying, "Mama said come eat," Mr. Rouyea told Joseph on the telephone he would not be able to come for another one to two hours. Deciding Mrs. Rouyea would put away the food by the time he would have arrived, Mr. Rouyea did not go to Mrs. Rouyea's house.
At approximately 2:30 or 3:30 a.m. on the morning of June 21, 2000, Mrs. Rouyea appeared at Mr. Rouyea's house and was very upset that she and her son had been "stood up." She and Mr. Rouyea argued. The parties dispute the extent of the argument. Eventually, Mrs. Rouyea left Mr. Rouyea's house.
On the afternoon of June 21, 2000, Mrs. Rouyea filed a "Petition for Domestic Abuse Protection" against Mr. Rouyea, alleging that during the early morning confrontation, Mr. Rouyea had grabbed her arms and pushed her down on the floor to keep her down. She sought an ex parte temporary restraining order (TRO) against Mr. Rouyea, which was granted by the trial court. The TRO ordered Mr. Rouyea not to "abuse, harass, stalk, follow, or threaten" Mrs. Rouyea or Joseph, not to contact Mrs. Rouyea or Joseph, and not to go within 100 yards of their residence.
On June 30, 2000, the trial court held a hearing to determine whether a protective order should be issued. Mr. and Mrs. Rouyea, and their daughter, Mandy, who lived with her father, testified at the hearing regarding the confrontation that occurred on June 21, 2000. After the hearing, the trial court signed a protective order, essentially ordering Mr. Rouyea to have no contact with Mrs. Rouyea or Joseph, and awarding temporary custody of Joseph to Mrs. Rouyea. The protective order was to remain in effect until June 30, 2001.[1]
*560 Mr. Rouyea appeals,[2] contending the trial court erred in issuing the June 30, 2000 protective order, because Mrs. Rouyea failed to prove the alleged abuse by a preponderance of the evidence as is required by La. R.S. 46:2135(B).

DISCUSSION
Under the Domestic Abuse Assistance Statute, La. R.S. 46:2131, et seq., upon good cause shown in an ex parte proceeding, the court may issue a TRO to protect a person who shows immediate and present danger of abuse. La. R.S. 46:2135(A). If the TRO is granted without notice, the matter shall be set for a hearing within twenty days, at which time, cause must be shown why a protective order should not be issued. At the hearing, the petitioner must prove the allegations of abuse by a preponderance of the evidence. La. R.S. 46:2135(B).
At the June 30, 2000 hearing, the events of the June 21, 2000 confrontation were described by Mr. Rouyea, Mrs. Rouyea, and Mandy.
Mandy Rouyea, Mr. and Mrs. Rouyea's twenty-year-old daughter, testified she was sleeping in her bedroom at her father's house when she was awakened by the sound of Mrs. Rouyea trying to enter through the front door. Although Mrs. Rouyea had a key to the door, the chain lock on the door kept her from entering. According to Mandy, Mr. Rouyea opened the door, allowed Mrs. Rouyea inside, and the two began to argue. Mandy acknowledged that her mother acted very aggressively toward her father and stated that Mrs. Rouyea "busted my Nanny's picture frame up and threw it up side my daddy's head." Mandy did not see Mr. Rouyea strike Mrs. Rouyea. She indicated her mother had a violent temper and was the most volatile person in her parents' relationship.
Mr. Rouyea testified Mrs. Rouyea was very "mad" when she arrived at his house. He indicated she was "beating [him] and tearing everything up in [his] room." When Mrs. Rouyea attempted to take Mr. Rouyea's wallet from under the mattress, he testified that he grabbed her hand and repeatedly asked her, "Would you go back home?" Mrs. Rouyea continued "cussing and hollering," went to the front of the house, "cussed" at Mandy, and then left. Mr. Rouyea denied ever abusing Mrs. Rouyea in the past and indicated she was the one who had scratched and beat him.
Mrs. Rouyea testified she was very upset Mr. Rouyea did not show up for dinner and that he had not called to say he was not coming, because she had stayed up with Joseph waiting for him. She admitted that she went to Mr. Rouyea's house at *561 approximately 2:30 or 3:00 a.m. on the morning in question to confront him. According to Mrs. Rouyea, Mr. Rouyea was drunk and they both became very irate. As she attempted to retrieve Mr. Rouyea's wallet from under his bed,[3] Mrs. Rouyea testified Mr. Rouyea "forced [her] down on [the] floor" and held her there. She denied attacking Mr. Rouyea, but admitted she scratched Mr. Rouyea on his back when he was holding her down on the floor. Mrs. Rouyea also acknowledged she was upset because Mr. Rouyea wanted a divorce.
At the end of the hearing, the trial court granted Mrs. Rouyea's request for a protective order against Mr. Rouyea and subsequently signed the order, which was to remain in effect from June 30, 2000, until June 30, 2001.
Pursuant to La. R.S. 46:2135(B), Mrs. Rouyea had the burden of proving the allegations of abuse against Mr. Rouyea by a preponderance of the evidence. "Domestic abuse" is defined in the Domestic Abuse Assistance Statute as including, but not limited to, "physical or sexual abuse and any offense against the person as defined in the Criminal Code of Louisiana, except negligent injury and defamation, committed by one family or household member against another." La. R.S. 46:2132(3). However, family arguments that do not rise to the threshold of physical or sexual abuse or violations of the criminal code are not in the ambit of the Domestic Abuse Assistance Statute. Harper v. Harper, 537 So.2d 282, 285 (La.App. 4 Cir.1988).
We have found no cases setting forth the standard of review applicable to a trial court's issuance of a protective order under the Domestic Abuse Assistance Statute. However, a review of the jurisprudence indicates that trial court's have wide discretion in the issuance of other types of orders, such as injunctive orders, discovery orders, orders of attachment for witnesses who fail to appear, alimony and support orders, and orders suspending certain licenses of obligor parents for failure to comply with an order of child support. See, e.g., de Nunez v. Bartels, 97-1384 (La.App. 1 Cir. 9/9/98), 727 So.2d 463, 472 (injunctive order to respond to contempt); Wollerson v. Wollerson, 29,183 (La.App. 2 Cir. 1/22/97), 687 So.2d 663, 665 (discovery order); State v. George, 26,867 (La.App. 2 Cir. 4/5/95), 652 So.2d 1382, 1390-1391, writ denied, 95-1151 (La.9/29/95), 660 So.2d 855 (order of attachment); State, In Interest of Penn v. Penn, 97-1269 (La.App. 1 Cir. 5/15/98), 712 So.2d 625, 627 (child support order); Richey v. Richey, 97-838 (La.App. 3 Cir. 12/10/97), 704 So.2d 343, 345 (suspension of nursing and driver's licenses for failure to pay child support). In such cases, a trial court's order is reversible only upon a showing of an abuse of discretion. Finding domestic abuse protective orders analogous to those listed above, we conclude the abuse of discretion standard of review is the proper standard to apply in the present case.
The record indicates the only physical action taken by Mr. Rouyea during the confrontation was in reaction to Mrs. Rouyea's attempt to take his wallet from under the mattress. According to Mr. Rouyea, he grabbed Mrs. Rouyea's hand and asked her to go home. According to Mrs. Rouyea, Mr. Rouyea forced her to the ground and held her there. Even accepting Mrs. Rouyea's version of the *562 incident as true, we find the trial court abused its discretion in concluding Mr. Rouyea's action constituted "domestic abuse" warranting the issuance of a protective order against him. Considering Mrs. Rouyea sought out Mr. Rouyea in his home, during the early hours of the morning, and attempted to take Mr. Rouyea's wallet, we conclude Mr. Rouyea acted reasonably in attempting to defend his personal property within the confines of his own home. Further, the preponderance of the evidence indicates Mrs. Rouyea was the aggressor in the confrontation and that she was the person who initiated physical violence against Mr. Rouyea by scratching and hitting him and throwing objects at him. After a thorough review of the record, we conclude Mrs. Rouyea failed to carry her burden of proving allegations of abuse against Mr. Rouyea, and the trial court clearly abused its discretion determining otherwise.[4]

DECREE
For the foregoing reasons, the June 30, 2000 protective order, prohibiting Mr. Rouyea from having contact with Mrs. Rouyea and Joseph Rouyea, is REVERSED. The trial court is ordered to take the appropriate steps to set aside the protective order within 45 days of the date of this decision and to file a copy of its action with this court. Costs of this appeal are assessed to Mrs. Rouyea.
NOTES
[1] After the June 30, 2000 order was issued, Mr. Rouyea responded by filing a "Petition for Domestic Abuse Protection" against Mrs. Rouyea, alleging that, during the June 21, 2000 confrontation, Mrs. Rouyea was "yelling and screaming," destroying his bedroom by "stabbing" a picture of his sister with a knife and then throwing the picture at him, tearing up a title to a vehicle, writing on the furniture, using foul language, and hitting and scratching him. He sought an ex parte TRO against Mrs. Rouyea, which was granted by the trial court. On July 17, 2000, the trial court held a hearing to determine whether a protective order should be issued against Mrs. Rouyea. After the hearing, the trial court signed a protective order, essentially ordering Mrs. Rouyea to have no contact with Mr. Rouyea. The protective order remains in effect until July 17, 2001.

We also note the record contains a "Judgment of Dismissal" signed by the trial court on September 28, 2000, dismissing Mrs. Royeau's "Petition for Domestic Abuse Protection" without prejudice. We express no opinion regarding the effect this judgment has on the present appeal.
[2] Louisiana Revised Statute 46:2136(F) provides for a devolutive appeal from a final protective order.
[3] According to the allegations of Mrs. Rouyea's "Petition for Domestic Abuse Protection," she was attempting to retrieve Mr. Rouyea's wallet to determine if he had her telephone number.
[4] Although Mrs. Rouyea's petition contained allegation of past incidents of abuse prior to the June 21, 2000 incident, these past incidents were not proved at the hearing on the protective order.