McCLENDON, J.
In this appeal, the defendant challenges a protective order forbidding him to have contact with the plaintiff. For the reasons that follow, we amend the protective order, affirm as amended, and remand for correction of the Uniform Abuse Protection Order.
FACTUAL AND PROCEDURAL HISTORY
On December 21, 2017, the plaintiff, Jessica Head, filed a Petition for Protection from Stalking pursuant to Louisiana Revised Statutes 46:2171, et seq. Therein, Ms. Head sought a protective order for herself against the defendant, David Robichaux, who was an acquaintance of Ms. Head and her boyfriend, Cody Matherne. Ms. Head alleged that Mr. Robichaux harassed her, threatened her, and made or sent telephone calls, texts, emails, or other electronic communications to her. Particularly, Ms. Head asserted that Mr. Robichaux would not leave her alone although she tried to block him from social media and that "he seems crazy over me, [obsessive], and won't stop." She further alleged that she felt unsafe and that after seven months it was getting worse. As a result, the trial court issued a temporary restraining order (TRO) pursuant to "[LSA-] R.S. 46:2131 et seq. (Domestic Abuse)" and set the matter for hearing. The TRO and original hearing date were continued, and the matter was heard on January 30, 2018. Following the hearing, the trial court signed a permanent order of protection, pursuant to the Domestic Abuse Assistance statutes, prohibiting Mr. Robichaux from:
• abusing, harassing, assaulting, stalking, following, tracking, monitoring, or threatening Ms. Head in any manner;
• contacting Ms. Head personally, through a third party, or via public posting, by any means, including written, telephone, or electronic (text, email, messaging, or social media) communication;
• going within 100 yards of Ms. Head or her residence; and
• damaging any property or belongings of Ms. Head or in any way interfering with her living conditions.
Mr. Robichaux now appeals, asserting in several assignments of error that the trial court erred in granting the protective order.[1]
APPLICABLE LAW
Ms. Head petitioned the trial court for an order of protection from stalking, pursuant to LSA-R.S. 46:2171, et seq. , known as the "Protection from Stalking Act."[2]
*816 Under this Act, "stalking" means any act that would constitute the crime of stalking under LSA-R.S. 14:40.2 or cyberstalking under La. R.S. 14:40.3. See La. R.S. 46:2172 ; Scott v. Hogan, 17-1716 (La.App. 1 Cir. 7/18/18), 255 So.3d 24, ----. A victim of stalking by a perpetrator who is a stranger to or acquaintance of the victim shall be eligible to receive all services, benefits, and other forms of assistance provided by Chapter 28 of Title 46, which is the "Protection from Family Violence Act" and includes specific statutes on "Domestic Abuse Assistance," provided the services, benefits, and other forms of assistance are applicable based on the status of the relationship between the victim and perpetrator. See LSA-R.S. 46:2173.
Pursuant to the Domestic Abuse Assistance statutes, LSA-R.S. 46:2131, et seq. , upon good cause shown in an ex parte proceeding, the court may enter a temporary restraining order to protect a person who shows immediate and present danger of abuse. LSA-R.S. 46:2135A. If a temporary restraining order is granted without notice, the matter shall be set within twenty-one days for a rule to show cause why a protective order should not be issued, at which time the petitioner must prove the allegations of abuse by a preponderance of the evidence. LSA-R.S. 46:2135B. Proof is sufficient to constitute a preponderance of the evidence when the entirety of the evidence, both direct and circumstantial, shows that the fact sought to be proved is more probable than not. Hanks v. Entergy Corp., 06-477 (La. 12/18/06), 944 So.2d 564, 578.
Louisiana law mandates that trial courts use a uniform form for the issuance of any TRO or protective order, called the "Uniform Abuse Prevention Order." See LSA-R.S. 46:2136.2C.[3] The trial court checks off a box provided on the uniform form to *817 indicate under which law it issues the TRO and/or protective order: (1) LSA-R.S. 46:2131, et seq. (Domestic Abuse); (2) LSA-R.S. 46:2151 (Dating Violence); (3) LSA-R.S. 46:2171, et seq. (Non-intimate stalking); (4) LSA-R.S. 2181, et seq. (Non-intimate sexual assault); (5) LSA-Ch.C. art. 1564, et seq. (Children's Code Domestic Abuse); or, (6) a court approved consent agreement. See Scott v. Hogan, 255 So.3d at 31.
A trial court's decision to issue or deny a protective order is reversible only upon a showing of an abuse of discretion. Rouyea v. Rouyea, 00-2613 (La.App. 1 Cir. 3/28/01), 808 So.2d 558, 561. Additionally, the trial court sitting as a trier of fact is in the best position to evaluate the demeanor of the witnesses, and its credibility determinations will not be disturbed on appeal absent manifest error. James v. Warren, 17-0757 (La.App. 1 Cir. 12/21/17), 240 So.3d 967, 969.
DISCUSSION
In this matter, Ms. Head testified that she filed for a protective order because Mr. Robichaux would not leave her alone although she asked him several times to do so. She stated that she became scared because he would send her texts or messages through social media that did not make sense. Ms. Head stated that the problem began when Mr. Robichaux posted a picture of her on Instagram after she requested that he leave her alone. After she blocked Mr. Robichaux on her telephone and social media accounts, she believed that he tried to contact her through an account with a fake name. Ms. Head testified that although she did not accept the friend request from the "fake" account, Mr. Robichaux called her several times with "TextFree" numbers, but would not say anything. Ms. Head stated that, as a result, she changed her telephone number.
Ms. Head confirmed with the trial court that she, her boyfriend, and Mr. Robichaux spent the day in the French Quarter on May 27, 2017. This was also the day that Mr. Robichaux took a picture of Ms. Head that was later posted on Instagram. Ms. Head stated that, while in the French Quarter, Mr. Matherne became very intoxicated and was arrested, and Mr. Robichaux drove her home. She testified that she was also intoxicated, and after arriving at her home, she and Mr. Robichaux engaged in sexual relations. Ms. Head testified that she and Mr. Robichaux communicated for about a month after that, but she eventually asked him to leave her alone. Nevertheless, according to Ms. Head, late one night in November 2017, there was a banging on her door, which she did not answer, but she believed it was Mr. Robichaux. Ms. Head testified that she called the sheriff's office on December 18, 2017, and that a few days later Mr. Robichaux posted an implied threat to Mr. Matherne on Facebook.
Ms. Head also believed that Mr. Robichaux was pretending to be other people on social media in an attempt to have contact with her. Additionally, Mr. Robichaux sent to Lindsey Sapia, a friend of Ms. Head, a message and slideshow video on Facebook containing pictures of Ms. Head. Ms. Sapia testified at the hearing, confirming that she received the Facebook message and video with pictures of Ms. Head on December 20, 2017. Ms. Sapia showed the trial court the message and slideshow on her cellphone. Ms. Head further testified that, on December 20, 2017, Mr. Robichaux messaged Ms. Head's cousin on Snapchat, and thereafter, she sought the restraining order. She introduced into evidence copies and screenshots of several social media posts, including one of her clearly in a drunken state with the following comments by Mr. Robichaux:
*818 • She didn't want to take this picture she don't know she's beautiful in and out.
• That night was great true colors came out.
• No lie the rest was in black and white but we was in screaming color!
Mr. Robichaux also testified, stating that he had been in a relationship with Ms. Head since late 2015 or early 2016, but that it was "undercover" until he sent Ms. Sapia the video in December. He stated that he and Ms. Head were close and that she told him that he saved her life that night. Mr. Robichaux explained to the trial court that he and Ms. Head were the same zodiac sign and he thought they were "going to the stars." He denied banging on Ms. Head's door in November 2017 and testified that Ms. Head continued to contact him by text. He admitted that he changed his name on a social media account and believed that because Ms. Head unblocked him on the account, she was trying to talk to him. At that point, the trial court stated it had heard enough and asked Mr. Robichaux to sit down.
Two of Mr. Robichaux's friends, Caleb Foret and Timothy Theriot, then testified, both denying that they ever sent a message to Ms. Head for Mr. Robichaux. Mr. Foret also testified that Mr. Robichaux was with him the night in November 2017, when Mr. Robichaux allegedly banged on Ms. Head's door. After the presentation of testimony, Mr. Robichaux stated that he had not contacted Ms. Head since the issuance of the TRO. He was allowed to introduce his own set of social media posts. Thereafter, at the conclusion of the hearing, the trial court orally granted the permanent protective order and signed the permanent order of protection.
As mentioned previously, Ms. Head sought a protective order against Mr. Robichaux for stalking. The crime of stalking, set forth in LSA-R.S. 14:40.2A, provides that "[s]talking is the intentional and repeated following or harassing of another person that would cause a reasonable person to feel alarmed or to suffer emotional distress. "Harassing" is defined as "the repeated pattern of verbal communications or nonverbal behavior without invitation which includes but is not limited to making telephone calls, transmitting electronic mail, sending messages via a third party, or sending letters or pictures." LSA-R.S. 14:40.2C(1). A "pattern of conduct" means "a series of acts over a period of time, however short, evidencing an intent to inflict a continuity of emotional distress upon the person." LSA-R.S. 14:40.2C(2).
Additionally, the crime of cyberstalking, is set forth in LSA-R.S. 14:40.3 :
B. Cyberstalking is action of any person to accomplish any of the following:
* * *
(2) Electronically mail or electronically communicate to another repeatedly, whether or not conversation ensues, for the purpose of threatening, terrifying or harassing any person.
LSA-R.S. 14:40.3B(2). The cyberstalking statute defines "electronic communication" as "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature, transmitted in whole or in part by wire, radio, computer, electromagnetic, photoelectric, or photo-optical system." LSA-R.S. 14:40.3A(1). The statute also defines "electronic mail" as the "transmission of information or communication by the use of the Internet, a computer, a facsimile machine, a pager, a cellular telephone, a video recorder, or other electronic means sent to a person identified by a unique address or address number and received by that person." LSA-R.S. 14:40.3A(2). The offense is deemed to have been committed *819 where the electronic communication was "originally sent, originally received, or originally viewed by any person." LSA-R.S. 14:40.3D. Thus, the cyberstalking statute does not require that the electronic communication be transferred or transmitted directly to the victim.
Ms. Head presented evidence that she repeatedly asked Mr. Robichaux to leave her alone, but that after seven months he was still trying to contact her. She testified that she felt unsafe, was afraid, and indicated that Mr. Robichaux's actions were escalating. Based on the totality of the record, we find no abuse of discretion in the trial court's determination that Mr. Robichaux's actions constituted harassment within the meaning of the stalking and cyberstalking statutes, LSA-R.S. 46:14:40.2 and 46:14:40.3.
Additionally, we do not find the trial court's indication that it had heard enough of Mr. Robichaux's testimony denied Mr. Robichaux the opportunity to testify and present his case. When Mr. Robichaux's testimony went off topic, the trial court asked him to take a breath and tell the court what he wanted to say. In this regard, we note that "[t]he court has the power to require that the proceedings shall be conducted with dignity and in an orderly and expeditious manner, and to control the proceedings at the trial, so that justice is done." LSA-C.C.P. art. 1631. Further, although Mr. Robichaux claimed that he was denied the opportunity to cross-examine Ms. Sapia, he never asked to do so.
However, we note that although Ms. Head requested that the trial court issue a protective order pursuant to the anti-stalking statutes, the trial court checked the box for protection from domestic abuse when it granted the permanent injunction. Yet, in the section labeled "[t]he protected person(s) is related to the defendant as: (check all that apply)," the trial court only checked the box identifying the relationship between Ms. Head and Mr. Robichaux as an "acquaintance," for "(s)talking or sexual assault only," and failed to check any other relationship between the parties. Therefore, considering that Ms. Head requested protection from stalking only and that the evidence clearly supports a finding of stalking, we hereby amend the protective order to show that it is issued pursuant to " La. R.S. 46:2171 et seq. (Non-intimate stalking)," and, as amended, the judgment granting the permanent protective order in favor of Jessica Head is affirmed.
CONCLUSION
For the above reasons, the January 30, 2018 judgment is amended to show that the permanent order of protection is issued pursuant to " La. R.S. 46:2171 et seq. (Non-intimate stalking)," and, as amended, the judgment is affirmed. We remand to the trial court for the limited purpose of correcting the Uniform Abuse Protective Order in accordance with our ruling herein. All costs of this appeal are assessed to the defendant, David Robichaux.
AMENDED AND, AS AMENDED, AFFIRMED; REMANDED WITH INSTRUCTIONS.

Ms. Head has not filed an appellate brief.

The statement of purpose of the Act is set forth in LSA-R.S. 46:2171, which provides:
The legislature hereby finds and declares that there is a present and growing need to develop innovative strategies and services which will reduce and treat the trauma of stranger and acquaintance stalking. The nature of stalking allegations are sometimes not easily substantiated to meet the prosecution's burden of proving the case beyond a reasonable doubt, and victims of stalking are left without protection. Orders of protection are a proven deterrent that can protect victims of stalking from further victimization; however, many victims are forced to pursue civil orders of protection through ordinary process, often unrepresented, rather than through a shortened, summary proceeding. Additionally, victims of stalking are not always aware of the vast resources available to assist them in recovering from the trauma associated with being a victim of stalking. It is the intent of the legislature to provide a civil remedy for victims of stalking that will afford the victim immediate and easily accessible protection.

Louisiana Revised Statutes 46:2136.2C provides:
The courts of this state shall use a uniform form for the issuance of any protective or restraining order, which form shall be developed, approved, and distributed by the Judicial Administrator's Office, shall be titled the "Uniform Abuse Prevention Order".
Further, the Louisiana Protective Order Registry encompasses temporary restraining orders, protective orders, preliminary injunctions, permanent injunctions, and court-approved consent agreements resulting from actions brought pursuant to R.S. 46:2131, et seq. , R.S. 46:2151, R.S. 46:2171, et seq. , R.S. 46:2181, et seq. , R.S. 9:361, et seq. , R.S. 9:372, Children's Code Article 1564, et seq. , Code of Civil Procedure Article 3607.1, or peace bonds pursuant to Code of Criminal Procedure Article 30B, or as part of the disposition, sentence, or bail condition of a criminal matter pursuant to Code of Criminal Procedure Articles 327.1, 335.1, 335.2, or 871.1 as long as such order is issued for the purpose of preventing violent or threatening acts or harassment against, contact or communication with, or physical proximity to, another person to prevent domestic abuse, stalking, dating violence, or sexual assault. LSA-R.S. 46:2136.2B.