**NOT DESIGNATED FOR PUBLICATION**

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2019 CA 1404

KIMBERLY JONES BYERS

VERSUS

KORY BYERS

*DATE OF JUDGMENT:*    OCT 0 8 2020

ON APPEAL FROM THE FAMILY COURT OF EAST BATON ROUGE
NUMBER 217,195, DIVISION D, PARISH OF EAST BATON ROUGE
STATE OF LOUISIANA

HONORABLE HUNTER GREENE, JUDGE

\* \* \* \* \* \*

| | |
|---|---|
| Brian J. Prendergast<br>Baton Rouge, Louisiana | Counsel for Plaintiff-Appellant<br>Kimberly Jones Byers |
| Jenel G. Secrease<br>Jay Michael Futrell<br>Ponchatoula, Louisiana | Counsel for Defendant-Appellee<br>Kory Byers |

\* \* \* \* \* \*

BEFORE:  McDONALD, THERIOT, AND CHUTZ, JJ.

Disposition: AFFIRMED.

**CHUTZ, J.**

Petitioner, Kimberly Jones Byers, appeals the dismissal of her petition for a protective order against defendant, Kory Byers, pursuant to La. R.S. 46:2131, *et seq.* (Domestic Abuse Assistance Act). For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

Kimberly and Kory were married on March 15, 2008. Three children were born of their marriage, one boy and two girls. On April 9, 2019, Kimberly filed a petition for divorce from Kory on the grounds of living separate and apart. In the divorce petition, Kimberly sought injunctive relief prohibiting him from alienating, concealing, or disposing of any community property and from making any degrading or demeaning remarks about her while the proceedings were pending. Kimberly made no allegations of domestic abuse and did not request injunctive relief against Kory prohibiting such conduct.

Thereafter, on June 4, 2019, Kimberly filed a verified petition for protection from abuse. She alleged she had an altercation with Kory on the preceding day (June 3) during the exchange of their two daughters. Kimberly alleged that after the children were in the back seat of Kory's truck, Kory drove off while she was still standing on the running board of his truck. She further alleged Kory then stopped the truck, got into the back seat with the children, and punched Kimberly's hand hard enough to leave a mark before pushing her off the running board with both his hands. After Kimberly contacted the police, Kory was arrested and charged with domestic abuse and child endangerment. According to Kimberly, Kory had also physically abused her on several occasions prior to the June 3 incident.

On the same day that Kimberly filed the petition for protection, the trial court issued an *ex parte* temporary restraining order (TRO) prohibiting Kory from abusing, harassing, stalking, following, monitoring, or contacting Kimberly, or from going within one hundred yards of her. The TRO was extended on two occasions.

2

hearing on Kimberly's rule to show cause for the protective order was held on August 21, 2019. At the beginning of the hearing, Kimberly's counsel moved for a continuance due to the failure of a subpoenaed witness to appear. The witness in question was the sheriff's deputy who investigated the June 3 incident. The trial court denied the motion for continuance.

At the hearing on her petition, Kimberly described the June 3, 2017 altercation as follows. After the girls were in the back seat of Kory's truck, he started to drive away before she told the girls goodbye. She "lightly knocked" on the tailgate on his truck, and Kory stopped and unlocked the door. Kimberly opened the door and stood on the running board with the door open to give the girls goodbye kisses. Because her cell phone was synced with the girls' iPads, Kimberly decided to also check the iPads to verify they did not contain several pictures she had taken on her cell phone of various bruises on her body.

Kimberly testified that Kory was impatient and told her he had to get back to work. He ripped one of the iPads out of her hand and told her to get out. He "hit the gas pedal pretty hard" and drove through the parking lot of her apartment building to the street – a distance she estimated to be eighty to ninety feet. Kimberly testified she was standing on the running board and held onto the door handle and the seat as Kory drove forward. He stopped when he reached the street, and the open door swung back and hit her. Kory again told her to get out. Kimberly responded that she would get out when Kory returned the iPad. She claims Kory moved to the back seat and "punched" her hand with his closed fist, before shoving her off the running board with both his hands.

Kimberly also testified concerning several other incidents when Kory allegedly abused her. In September 2014, Kimberly and Kory attended a LSU football game in Houston with another couple. Kimberly alleged that as they were returning to their hotel, Kory became upset when she corrected his pronunciation in

3

front of the other couple. She claimed Kory shoved her, causing her to fall backwards over a metal luggage cart and strike her head. She filed a police report, but admitted she was never contacted for any follow-up to the report. Moreover, Kory's name does not appear on the report.

In May 2013, while Kimberly was eight-months pregnant, she fell down several stairs at the family home. Kimberly gave the following account of the incident. Kory was putting their son to bed upstairs when she heard a loud noise and her son began crying. She rushed upstairs to find Kory towering over the child yelling at him. When Kimberly reached for Kory's shoulder to pull him away, he lost control. He pushed her to the floor and held her down. Telling Kimberly that he would handle the situation, Kory then pushed her out the bedroom door, causing her to fall backwards and down several stairs. Kimberly asserted that Kory pushed her down the stairs. She filed a domestic disturbance report with the Ascension Parish Sheriff's Office, but testified she chose not to press charges against Kory.

Additionally, Kimberly alleged Kory has repeatedly tracked her location through the children's court-ordered Gizmo device at odd hours when the children were sleeping. She further testified that Kory suffers from suicidal ideations. In March 2019, when they were telling the children that they were getting a divorce, Kory became upset, retrieved his handgun, put it into the back waistband of his pants, walked back through the living room, and was "going to get in his truck." Kimberly believed that Kory intended to leave the house and commit suicide, but stopped when one of the children began crying and calling out to him. Finally, Kimberly testified that Kory took her car keys and cell phone in April 2019 and refused to return them to her, thereby preventing her from leaving. She stated he only returned the keys and cell phone to her when she dialed the phone number for the police. Once the items were returned to her, she cancelled the call.

Kimberly introduced various photographs into evidence showing bruises and scratches on various parts of her body, which she asserted were caused by Kory. Kory denied causing the bruises.

During his testimony, Kory gave the following account of the June 3 altercation. Once the exchange of the children was complete, he started to drive away. He stopped when he heard something slam into the back of his truck "very hard." When he looked into the rearview mirror, Kimberly was standing behind the truck. Kimberly told him she had not kissed the girls goodbye, so he unlocked the truck's door. Kimberly opened the door, stood on the running board, and began doing something on the girls' iPads. Kory told Kimberly he was late for a meeting and needed to go. She ignored him at first, then said he could wait. Kory testified he took one of the iPads out of Kimberly's hand, refused to give it back, and told her to get out of the truck. She refused to leave until he returned the iPad. With his foot on the brake and "barely moving," Kory moved the truck forward approximately ten feet with Kimberly standing on the running board. He testified he did not touch the accelerator. Kory stopped the truck as soon as he saw the open door next to Kimberly begin to move, but the door still swung back and hit her.

Despite Kory's repeated requests, Kimberly refused to get off the truck's running board. Kory stated he "took her by her left hand and walked her off of the running board." Kimberly continued to hold onto the door handle with her right hand and refused to let go. Kory said he hit Kimberly on the top of her hand in an attempt to get her to release the door handle so that he could leave. When he hit her hand, Kimberly laughed, released the door handle, and walked away.

Kory denied punching Kimberly's hand in the manner she described in her testimony. The trial transcript reflects that Kory demonstrated to the court the manner in which he brought his hand down upon Kimberly's hand.

As to the alleged incident in Houston, Kory testified the entire group had been drinking, and Kimberly was "stumbling inebriated" when they returned to their hotel. He denied being angry at Kimberly at the time. Kory stated that he accidentally "bumped" Kimberly while he and his cousin were "joking around" and pushing each other. He explained that due to Kimberly's extreme inebriation, the bump caused her to fall backward just as a bellman was passing by with a luggage cart.

Kory's testimony regarding the stairs incident also differed substantially from Kimberly's account thereof. He categorically denied pushing Kimberly down the stairs. According to Kory, Kimberly was already angry when she entered their son's bedroom, and she immediately began punching Kory with both hands. He restrained her hands so that she could not hit him and pushed her out of the room. Kimberly stumbled, which caused her to roll backwards and down several stairs.

Kory denied Kimberly's allegation that he repeatedly tracked her location on their son's Gizmo device. He admitted he did so on a single occasion. Further, Kory admitted he was suicidal for a short period from January to April 2019, following an unsuccessful attempt to salvage his marriage to Kimberly. Kory also acknowledged he took Kimberly's keys and cell phone on one occasion so that she would stay and finish their conversation. He returned the phone and the keys to her when she called the police. Neither Kory nor Kimberly testified as to how long Kory had the keys and cell phone before returning them.

At the conclusion of the hearing, the trial court denied Kimberly's request for a protective order. In its oral reasons for judgment, the trial court indicated it found Kory's version of events more credible than Kimberly's version. On August 21, 2019, the trial court signed a judgment dismissing Kimberly's petition for protection from abuse on the grounds that she had failed to prove the allegations therein. Kimberly now appeals, alleging in three assignments of error that the trial court erred

6

in concluding she did not prove by a preponderance of the evidence that Kory abused her and that she was afraid of him, as well as in denying her motion for continuance.

## DISCUSSION

Pursuant to the Domestic Abuse Assistance Act, upon good cause shown in an *ex parte* proceeding, the court may issue a temporary restraining order to protect a person who shows an immediate and present danger of abuse. La. R.S. 46:2135(A); *Rouyea v. Rouyea*, 00-2613 (La. App. 1st Cir. 3/28/01), 808 So.2d 558, 560; see also La. C.C.P. art. 3603.1. If the temporary restraining order is granted without notice, the matter shall be set for a hearing within twenty-one days, at which time, cause must be shown why a protective order should not be issued. La. R.S. 46:2135(B). Pursuant to La. R.S. 46:2135 and 46:2136, there must be a showing of "good cause" for the issuance of a protective order. *Pierce v. Pierce*, 19-0689 (La. App. 1st Cir. 2/21/20), 298 So.3d 902, 906; *Dvilansky v. Correu*, 16-0279 (La. App. 4th Cir. 10/26/16), 204 So.3d 686, 689-90, writ denied, 16-2081 (La. 1/9/17), 214 So.3d 871. The petitioner must prove the allegations of abuse by a preponderance of the evidence. La. R.S. 46:2135(B).

For purposes of the Domestic Abuse Assistance Act, "domestic abuse" is defined in La. R.S. 46:2132(3) as including, but not limited to, "physical or sexual abuse and any offense against the person, physical or non-physical, as defined in the Criminal Code of Louisiana, except negligent injury and defamation, committed by one family member, household member, or dating partner against another." However, family arguments that do not rise to the threshold of physical or sexual abuse or violations of the criminal code are not within the ambit of the Domestic Abuse Assistance Act. *Rouyea*, 808 So.2d at 561.

A trial court's decision to issue or deny a protective order is reversible only upon a showing of an abuse of discretion. *Pellerano v. Pellerano*, 17-0302 (La. App. 1st Cir. 4/12/19), 275 So.3d 947, 950, writ denied, 19-00756 (La. 9/17/19), 279

So.3d 379; *Rouyea*, 808 So.2d at 561. Moreover, the trial court is in the best position to evaluate the demeanor of the witnesses, and its credibility determinations will not be disturbed on appeal absent manifest error. *Pellerano*, 275 So.3d at 950; *James v. Warren*, 17-0757 (La. App. 1st Cir. 12/21/17), 240 So.3d 967, 969. If the factfinder's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even though convinced that had it been sitting as the factfinder, it would have weighed the evidence differently. *Allen v. Allen*, 08-2181 (La. App. 1st Cir. 5/8/09), 2009 WL 1271879, at *3 (unpublished).

In the instant case, the testimony of Kimberly and Kory presented the trial court with two conflicting versions of events.[1] In its reasons for judgment, the trial court specifically concluded Kory's testimony was more credible than that of Kimberly. Contrary to Kimberly's claims, Kory denied he intentionally pushed her during the Houston incident or down the stairs at their home. Additionally, with respect to the incident that occurred on June 3, while Kimberly claimed Kory hit the truck's accelerator hard and drove forward eighty to ninety feet with her standing on the running board, Kory told a quite different story. He testified that with his foot on the brake, the truck slowly moved forward about ten feet without him touching the accelerator. Kory further testified that when he hit the top of Kimberly's hand so that she would release her hold on the truck's door handle, she laughed and walked away. It seems unlikely that Kimberly would have so responded if Kory had actually punched her hand with his closed fist as she described. Moreover, while Kimberly introduced several photographs showing bruises to her body, the trial court obviously rejected her testimony that the bruises were caused by abuse from Kory.

---

[1] Kimberly's father, David Jones, and her friend, Kinsi Heaton, also testified at trial. The trial court mentioned their testimony in its reasons for judgment, but apparently accorded it little weight. The trial court noted that Ms. Heaton did not observe any of the incidents, but merely relayed what she had been told by the parties. Mr. Jones also did not witness any of the incidents of alleged abuse.

Based on the trial court's reasons for judgment, it is clear the court concluded none of Kory's actions constituted domestic abuse under the circumstances present.

Considering the trial court's superior position to evaluate the demeanor of witnesses, we cannot say the trial court was manifestly erroneous in crediting Kory's testimony over that of Kimberly. Further, given this credibility determination, we also cannot say the trial court was clearly wrong or abused its discretion in concluding Kimberly did not prove conduct by Kory rising to the level of domestic abuse so as to justify the issuance of a protective order. Based on our review of the record, we find no manifest error or abuse of discretion in the trial court's denial of a protective order.

Finally, Kimberly argues the trial court erred in denying her oral motion for continuance. The motion was made at the beginning of the hearing due to the non-appearance of Corporal Jared Arceneaux, an East Baton Rouge Parish sheriff's deputy. Counsel asserted Corporal Arceneaux was a material witness who was subpoenaed by Kimberly. Despite this assertion, counsel failed to disclose to the trial court the substance of Corporal Arceneaux's expected testimony, merely stating that Corporal Arceneaux investigated and arrested Kory in connection with the June 3 altercation.

Under La. C.C.P. art. 1602, a continuance is mandatory if the movant shows "a material witness has absented himself without the contrivance of the party applying for the continuance." According to *Black's Law Dictionary* (11th ed. 2019), a "material witness" is one "who can testify about matters having some logical connection with the consequential facts, [especially] if few others, if any, know about those matters; a person who is capable of testifying in some relevant way in a legal proceeding." In addition to the peremptory grounds set forth in Article 1602, the trial court has discretion to grant a continuance where there is good ground therefor. La. C.C.P. art. 1601: *Landry v. Leonard J. Chabert Medical Center*, 02-

1559 (La. App. 1st Cir. 5/14/03), 858 So.2d 454, 460, writs denied, 03-1748, 03-1752 (La. 10/17/03), 855 So.2d 761. The denial of a motion for continuance will not be disturbed on appeal absent a showing of an abuse of discretion by the trial court. *Newsome v. Homer Memorial Medical Center,* 10-0564 (La. 4/9/10), 32 So.3d 800, 802 (*per curiam*).

In the instant case, Corporal Arceneaux did not personally witness the altercation between Kimberly and Kory. When he arrived to speak to Kimberly, Kory had already departed. Any knowledge he had of the incident was based on what the parties told him. Moreover, even when questioned by the trial court, Kimberly's counsel failed to inform the court of the substance of Corporal Arceneaux's expected testimony and/or what counsel intended to establish by the testimony. Given the circumstances, the trial court clearly concluded Kimberly did not establish Corporal Arceneaux was a material witness who could provide the court with consequential testimony concerning the events in question. Accordingly, she failed to establish a peremptory ground for a continuance under Article 1602. Nor does the record reveal any good ground for a continuance under Article 1601. Based on our review of the record, we find no error or abuse of discretion in the trial court's denial of the motion for continuance.

## CONCLUSION

For the above reasons, the judgment of the trial court dismissing Kimberly Byers' petition for protection from abuse, with prejudice, is affirmed. All costs of this appeal are assessed against Kimberly Byers.

**AFFIRMED.**