MOORE, J.
| T Zachary Callahan, appearing pro se, appeals an abuse prevention protective order obtained by his former girlfriend, Debra Shipp. We affirm.
Zachary and Debra started dating sometime in 2010, when he was 25 and she was 19. Debra admitted that before they got together, she had done drugs; however, she went through detox and Zachary conceded she was “clean” while they were a couple. In 2011, they moved into a trailer near Blanchard; Debra got pregnant. According to Debra’s mother, the couple argued a lot; she often saw bruises on her daughter. The relationship strained, and Debra left, staying sequestered from Zachary and his family for 2½ weeks. During this time, Zachary and his mother phoned Debra’s mother often; Zachary insisted he was concerned about the welfare of his unborn child, but Mrs. Shipp thought he was just jealous that she might be off with another man. When Debra returned to her mother’s house, Zachary called again, and according to Mrs. Shipp, he was “not very civil.”
*455 On May 6, 2012, Zachary found a note or letter on the windshield of his car.[1] Zachary testified that he knew it was from Debra, and he felt that its contents showed she was in danger of hurting herself or relapsing into drug use. This alarmed his whole family; with their encouragement, he decided to get a coroner’s commitment on Debra. ■ At trial, he denied actually signing the petition, but admitted that he authorized his mother to do so.[2] Debra, however, denied ever putting any note on Zachary’s car. On May 6, she testified, she was at the Louisiana Boardwalk, applying for jobs, |2a point her mother corroborated.
Early on the morning of May 8, deputies knocked on the Shipps’ door and took Debra into custody for the commitment. She was taken to LSU-HSC for an evaluation. According to an emergency room report from Dr. James Patterson, Debra had an adjustment disorder, no suicidal or homicidal thoughts, and no drug use (only some iron supplements). With these findings, apparently, the coroner refused to commit Debra.[3]
The next day, May 9, 2012, Debra filled out a petition for protection from abuse under the Domestic Abuse Assistance law, La. R.S. 46:2131-2148. The court signed an ex parte abuse prevention TRO prohibiting Zachary from abusing, harassing, stalking or threatening Debra; from contacting her in person or through third persons, or going within 500 yards of her person; and from going within 100 yards of her residence.
At the hearing on the rule, held May 30, 2012, the parties both appeared pro se. Debra, her mother and Zachary testified as outlined above. Debra offered in evidence a printout of Zachary’s Facebook wall, where he stated on May 2 that he might get Debra committed; his grandmother replied that Debra is “still playing her little games” and his cousin posted, “get dat bitch!” Debra admitted that the note on Zachary’s car was in fact in her handwriting, but it was a poem she had written many years earlier, when she was under the influence, and she denied putting it on Zachary’s car. She explained that Zachary still had many of her things in his possession, including the pink notebook from which that page had been taken. Finally, [¡¡she testified that while they were living together, Zachary had pushed her, hit her in the head, and grabbed and choked her.
Mrs. Shipp testified that she never actually saw Zachary strike Debra, but, “There’s been lots of bruises on my daughter,” which Debra finally admitted had been inflicted by Zachary. She felt that Zachary always “bullied” Debra, and she described several phone calls and personal visits from Zachary while Debra was away.
Zachary testified that he did not sign the coroner’s commitment, “and I didn’t have anything physically to do with that as well,” but then admitted that he encouraged or permitted his mother to do so. Also, he had thought about committing her for months because of her drug use, but he admitted she had been clean as long as he had known her. He reiterated that he was calling and visiting the Shipps only out of concern for his unborn child. Finally, Zachary offered into evidence four letters from friends of his, stating that they had never seen him strike Debra, but they had seen her cursing at and threatening him.[4]
*456 The court granted the abuse prevention protective order, noting that Zachary’s false allegations to get Debra committed amounted to pure harassment. The court also advised Zachary that if he is really concerned about the welfare of his unborn child, there are “proper channels” to seek visitation.
Zachary has appealed, pro se, identifying three issues and one assignment of error, “The trial court erred in issuing this protective order.” 14He argues that Debra failed to show that “domestic abuse of any kind occurred at any time,” and that mere verbal harassment does not constitute a valid reason for issuing a protective order. In support, he cites Culp v. Culp, 42,239 (La.App. 2 Cir. 8/9/07), 960 So.2d 1279, writ not cons., 2007-1836 (La.10/5/07), 964 So.2d 378.
Debra has not filed a brief.
The purpose of the Domestic Abuse Assistance law, La. R.S. 46:2131-2143, is to provide relief to victims of domestic violence by establishing a civil remedy for domestic violence which will afford the victim immediate and easily accessible protection. Coy v. Coy, 46,655 (La.App. 2 Cir. 7/13/11), 69 So.3d 1270, and citations therein. Domestic abuse includes but is not limited to physical or sexual abuse or any offense against the person as defined in the Criminal Code of Louisiana, except negligent injury and defamation, committed by one family or household member against another. La. R.S. 46:2132(3). The court may grant any protective order to bring about a cessation of abuse of a party. La. R.S. 46:2136 A; Coy v. Coy, supra. Abuse protection protective orders are reviewed for abuse of discretion. Coy v. Coy, supra; Rouyea v. Rouyea, 2000-2613 (La.App. 1 Cir. 3/28/01), 808 So.2d 558.
This court and others have held that the definition of domestic abuse in R.S. 46:2132(3) does not incorporate nonphysical acts. General harassment and family arguments, if they do not rise to the threshold of physical or sexual abuse, or an offense against the person, are not within the ambit of the Domestic Abuse Assistance law. Coy v. Coy, supra; Rouy-ea v. | (Rouyea, supra; Fontenot v. Newcomer, 2010-1530 (La.App. 3 Cir. 5/4/11), 63 So.3d 1149; Harper v. Harper, 537 So.2d 282 (La.App. 4 Cir.1988).
If the only evidence of domestic abuse in this case were Zachary’s act of filing a groundless coroner’s commitment against Debra, this would indeed be nonphysical harassment and insufficient to support the domestic abuse protective order.[5] As in Coy and Culp, this court would be constrained to vacate the protective order.
However, on examination by the court, Debra described some instances of actual physical abuse:
The Court: Let me cut you off. You have in your petition allegations that he pushed you?
Miss Shipp: Yes, sir. I put that in the past incidents.
The Court: And the part about hitting you in the head and grabbing and choking you, that’s—
Miss Shipp: That’s all in the past when I was living with him, sir, yes, it is.
*457 Notably, Zachary did not deny or contradict this testimony. Later, Mrs. Shipp corroborated Debra’s account:
The Court: You said you saw bruises, bruises on your daughter, when was the last time you saw some bruising on her?
The Witness: Probably a couple of months ago. There’s been lots of bruises on my daughter.
The Court: Do you know where those bruises came from?
The Witness: From him.
IrThe Court: How do you know that?
The Witness: Because she finally told me that he was hitting her. I questioned her about it and she was ashamed of it and didn’t want to come to us for help, and I told her she needed to get out of the situation.
Again, Zachary did not object to this testimony or contradict it when he took the stand. Instead, he equivocated about whether he or his mother signed the petition for a coroner’s commitment, admitted that he had no basis to allege that Debra might be lapsing into drug use, and asserted, “I left her because she was being violent with me.” From this record, the district judge did not abuse its discretion in finding that Zachary committed physical abuse or an offense against the person of Debra.
The abuse prevention protective order is supported by the evidence and complies with the Domestic Abuse Assistance law, La. R.S. 46:2135 A and 46:2136 A(l). The assigned error lacks merit.
The protective order is affirmed. All appellate costs are to be paid by Zachary Callahan, to the extent permitted by La. C.C.P. art. 5188.
AFFIRMED.
SEXTON, J. (Ad Hoc), dissents with reasons.

. The note was not offered in evidence..

. The petition for a coroner’s commitment was not offered in evidence.

.The records (if any) from the coroner’s proceedings were not offered in evidence.

. Debra did not object to the letters as hearsay, but complained that one of them was "exaggerated.”

. Such conduct might constitute the offense of filing or maintaining false public records, La. R.S. 14:133 A(3), but this is classed as an offense affecting organized government, not an offense against the person as required to activate R.S. 46:2132(3).