McCALLUM, J.
In this child in need of care proceeding, Mary Slater ("Slater") and Harold Echols, III ("Echols"), appeal a judgment awarding guardianship of their two minor children to Slater's cousin.
We affirm the judgment of guardianship, but remand the matter to the lower court to set specific supervised visitation.
FACTS[1]
Slater and Echols, who are unmarried, are the biological parents of D.E., who was born on March 11, 2012, and H.E., who was born on November 13, 2017. Slater, who is 25 years old, has no other children. Echols, who is 37 years old, has two other children: a 13-year-old over whom Echols' parents have guardianship, and a 19-year-old.
On November 14, 2017, the Louisiana Department of Children and Family Services ("Department") learned that the newborn H.E.'s urine drug screen test was positive for opiates, and that Slater did not have a prescription for the medication. Slater, who tested positive for amphetamines and opiates, denied past drug use and claimed that she had borrowed pain medication from her grandmother for tooth pain. She also claimed that she tested positive for amphetamines because she had been taking Lipozene. It was noted by the attending physician that H.E. displayed withdrawal symptoms.
Slater had no prior history with the Department, while Echols had been the parent of two children who had been placed in foster care because of neglect. On November 21, 2017, the Department made a home visit. Slater and Echols admitted to a history of drug use, with heroin as their drug of choice, but denied recent use of illegal substances. Test results were received on that date showing that Slater tested positive by hair screen and urine screen for amphetamine and methamphetamine. When Slater was confronted on November 30 about her test results, she admitted *880 that she had lied earlier about her drug use and had used methamphetamine the week before H.E. was born.
A hair sample was obtained from Echols on November 22 after he failed to produce enough urine for a specimen. Results received on November 29 showed that he was positive for amphetamine, THC, and methamphetamine on the rapid screen. Echols was positive for amphetamine, methamphetamine, cocaine, and marijuana metabolite on the hair screen.
On December 6, all four of the family members were screened for drugs. Slater and Echols submitted to rapid urine screenings, and hair samples were taken from the children. Slater's screen was negative for all substances. Echols submitted a substitute sample, and after being confronted, he admitted to having used methamphetamine, marijuana, and Subtex. A rapid screen of his valid urine sample was positive for amphetamine, methamphetamine, methadone, and opiates. The Council on Alcoholism and Drug Abuse ("CADA") was contacted when Echols expressed interest in inpatient substance abuse treatment, and he was placed on a waiting list.
On December 8, Slater and Echols were referred to Active Recovery for outpatient substance abuse treatment. On December 13, CADA found Echols to be inappropriate for treatment there because of his social anxiety, multiple personality, and bipolar disorders. These mental health issues had gone untreated for 15 years. He was referred to a behavioral hospital, and it was recommended by CADA that he obtain medication for his mental health disorders before he would be accepted for treatment.
On December 13, the results of D.E.'s hair drug screen were received. He tested positive for methamphetamine. The next day, the results of H.E.'s hair drug screen were received. She tested positive for amphetamine and methamphetamine.
On December 14, the Department obtained the results of Echols' urine drug screen. He tested positive for amphetamine, methamphetamine, and marijuana metabolite.
An oral emergency instanter order was issued on December 15 removing D.E. and H.E from their parents. An instanter order was signed on December 18.
A continued custody hearing was held on December 19. The attorney for the children told the court that D.E. wanted to be placed with Donald Clarke ("Donald") and Wendy Clarke, who live in Dallas, Texas. Donald, who is Slater's cousin, is the husband of Wendy. Donald's sister, who was willing to be a placement resource, appeared at the hearing. She told the court that Donald had a relationship with D.E. and had supported D.E. since he was a newborn, and that she thought placement with the Clarkes would be in D.E.'s best interest. The court placed the children in the legal custody of the Clarkes, with visitation at the Clarkes' discretion. The court ordered an ICPC home study of the Clarkes, and set a hearing for adjudication and disposition. The court also ordered both parents to be evaluated for substance abuse treatment; if treatment was recommended, they were to successfully complete the drug program at Family Preservation Court ("FPC").
Slater and Echols submitted to drug tests on January 23. Slater's rapid screen was negative for all substances. Echols' rapid screen was positive for methamphetamine. The results of the hair screens and send-off urine screens were received on January 30. Slater's hair drug screen was again positive for amphetamine and methamphetamine, albeit at a lower level than her hair screen in November. Echols'
*881 send-off urine drug screen was positive for methamphetamine, and his hair drug screen was positive for amphetamine, cocaine, marijuana metabolite, and methamphetamine.
In January, the court ordered Slater and Echols to participate in and follow all rules of substance abuse treatment and the FPC. Slater was found appropriate for treatment on January 25, and began substance abuse treatment through the FPC on January 31. She also began working at a local restaurant. On January 24, Echols was found appropriate for treatment, and began substance abuse treatment through the FPC on January 31. He also began working at the same restaurant on a part-time basis. Both parents were referred to Bridges to Recovery for mental health counseling and treatment.
The Department wrote to the court on February 5, noting that the ICPC Home Study request for the Clarkes had not been submitted to their office. The Department also noted that Slater and Echols had attended all scheduled visits with the children, and that all interaction had been observed to be appropriate.
The State filed a petition on January 18 asserting that the children should be adjudicated in need of care. An adjudication hearing was held on February 6. The parties stipulated that the parties named in the petition would testify as set out in the petition if they were called to testify. The court adjudicated the children to be in need of care, set a disposition hearing for March 6, and ordered custody to be continued with the Clarkes.
The disposition hearing was held as scheduled on March 6. The Department recommended that the court maintain the status quo and that the parents continue to work their case plans. The Department representative reported: (1) the parents were "doing pretty well" in the FPC program; (2) Slater was testing negative for drugs, and was attending groups regularly with any absences being excused; (3) Echols was attending groups regularly with any absences excused; (4) Echols had a positive test for alcohol on February 21, but had tested negative for other substances; and (5) Echols, who was working part time at a restaurant, was currently taking medication, and had completed inpatient psychiatric treatment.
The children's attorney informed the court at the disposition hearing that Donald desired guardianship of the children.[2] Donald told the court that for several reasons he thought it was in the children's best interest to remain with them. First, D.E. had been in and out of their lives for five years as he had been going from house to house and staying with different families, which affected D.E. mentally and possibly physically. Second, the parents had been struggling with their issues for a long time. Third, he felt the children would have a great chance in life by remaining with the Clarkes. Fourth, D.E. wanted stability, which he was getting with the Clarkes, and was doing well in school. Donald, who stated he would be open to overnight visits, acknowledged that the children love their parents, but he thought they preferred more stability and guidance in life. Slater said she agreed to an extent, but that in light of the personal changes that she had made, she did not think the children were ever in need of care. She did not contest that their drug use had affected the children. Echols also agreed, but thought if guardianship were granted it *882 would be harder for them to regain custody; thus, he wanted to keep things as they were while they continued to work their case plan. The father's attorney suggested to the court that it was premature to discuss the permanency of guardianship, and it would be better to await the review hearing scheduled for June 14. The attorney for the mother pointed out that H.E. had not been subjected to a long life of turmoil as she was only three months old.
The Department reported to the court that both parents were receiving counseling at Milestones. The Department acknowledged that because Slater had been using illegal substances for 10 years, and Echols for 20 years, it was their opinion that it would take some time for the parents to adjust and obtain sobriety. The Department told the court it could no longer provide supervision and case management if guardianship was granted; however, the Department acknowledged that even under guardianship, the parents would still be able to receive counseling and be ordered to continue in drug court. The Department reiterated that it was concerned that if guardianship were granted at that early date, the parents would not be given the opportunity to work their case plans. The Department believed it was very early in the matter to make that recommendation.
The attorney representing the children agreed with the Department that it was early in the case plan for guardianship; however, she noted that the children had lived with turbulence and chaos for a long time, so the sooner they received permanency in the case, the better off they would be in the long term. She added that children do better when there is stability and consistency, and that was what the Clarkes were offering. Finally, she stated that if guardianship were not granted at the disposition hearing, then she would request it at the next hearing.
The juvenile court placed the children in guardianship with the Clarkes. The court ordered that the Clarkes allow any visitation that they think is appropriate based on the parents' progress at the time, whether it was overnight, weekends, extended, not extended, or supervised by them in a public place. The court also noted that it encouraged the parents to continue doing what they were doing, because it was obvious that they had something working really well, and the court was extremely pleased and proud of them. The court added that the parents were clearly on the right path.
A judgment of guardianship in favor of the Clarkes was rendered on March 21. The court determined: (1) the children continued to be in need of care; (2) the Department had made reasonable efforts to prevent removal and reunify the family; (3) other efforts could not have prevented or shortened separation of the family because of the serious, emergent danger to the children at the time of removal, and the time required for the parents to comply with the case plan could not protect the health and safety of the children; (4) the Department had made reasonable efforts to reunify the family since removal; (5) the Department had made reasonable efforts to finalize a permanent plan and the guardianship was a permanent plan; (6) guardianship was the least restrictive disposition and was consistent with the rights of the children and their needs, health, safety, and welfare; (7) granting guardianship was in the best interest of the children because it provided a safe and stable home for the children and did not continue them indefinitely in foster care; and (8) there was a legitimate purpose and factual basis to support guardianship because the children could not be safely returned to *883 the custody of the parents at the time or wait any longer for their parents to rehabilitate.
The Department's custody was vacated and its supervision was terminated. The parents were given the right of supervised visitation at the discretion of, and upon a reasonable request and notification to, the Clarkes.
Echols appealed, arguing that the juvenile court erred in awarding guardianship after less than three months had elapsed since removal and when the Department recommended that the parents receive additional time to work their case plan. Slater argues that the juvenile court manifestly erred in finding that guardianship was the least restrictive disposition pursuant to La. Ch. C. art. 683. It is also contended that no deference should be given to the placement because the juvenile court committed legal error as no ICPC study was completed and the court did not find or attempt to explain how it had been shown the La. Ch. C. art. 722 grounds by clear and convincing evidence. In the alternative, the parents argue that the juvenile court erred in not setting specific visitation for them.
DISCUSSION
Award of guardianship
Guardianship under the Children's Code is a custodial arrangement that is intended to be a permanent placement for children when neither reunification with a parent nor adoption has been found to be in their best interest, although it is not immutable. In re L.M.M., Jr. , 2017-1988 (La. 6/27/18), 2018 WL 3154776, --- So.3d ----. The Louisiana legislature has set forth stringent criteria for any change or modification to a guardianship. Id. Guardianship is a dispositional alternative under La. Ch. C. art. 681 as well as the third priority of placement for a permanent plan under La. Ch. C. art. 702.
A disposition hearing may be conducted immediately after the adjudication and shall be conducted within 30 days after the adjudication. La. Ch. C. art. 678(B). At the disposition hearing, the court shall consider the report of the predisposition investigation, the case plan, any reports of mental evaluation, and all other evidence offered by the child or the state relating to the proper disposition. La. Ch. C. art. 680. The court may consider evidence which would not be admissible at the adjudication hearing. Id.
La. Ch. C. art. 681 provides that when a child has been adjudicated to be in need of care, the child's health and safety shall be the paramount concern, and the court may do any of the following:
.....
(4) Grant guardianship of the child to a nonparent.
(5) Make such other disposition or combination of the above dispositions as the court deems to be in the best interest of the child.
.....
The court shall impose the least restrictive disposition of the alternatives enumerated in Article 681 which the court finds is consistent with the circumstances of the case, the health and safety of the child, and the best interest of society. La. Ch. C. art. 683(A).
La. Ch. C. art. 702(C) states that the court shall determine the permanent plan for the child that is most appropriate and in the best interest of the child. That article lists placement with a legal guardian behind reunification and adoption in the priorities of placement.
The purpose of guardianship is set forth in La. Ch. C. art. 718(A), which provides:
*884 The purpose of guardianship is to provide a permanent placement for children when neither reunification with a parent nor adoption has been found to be in their best interest; to encourage stability and permanence in the lives of children who have been adjudicated to be in need of care and have been removed from the custody of their parent; and to increase the opportunities for the prompt permanent placement of children, especially with relatives, without ongoing supervision by the department.
To reverse a trial court's permanency plan determination, an appellate court must find from the record that the trial court's finding is clearly wrong or manifestly erroneous. State in Interest of N.B. , 51,374 (La. App. 2 Cir. 2/15/17), 215 So.3d 398 ; State in Interest of C.S. , 49,955 (La. App. 2 Cir. 3/18/15), 163 So.3d 193. In a manifest error review, it is important that the appellate court not substitute its own opinion when it is the juvenile court that is in the unique position to see and hear the witnesses as they testify. State in Interest of P.F. , 50,931 (La. App. 2 Cir. 6/22/16), 197 So.3d 745 ; State in Interest of N.C. , 50,446 (La. App. 2 Cir. 11/18/15), 184 So.3d 760. Where there is conflicting testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even when the appellate court may feel that its own evaluations and inferences are as reasonable as those of the juvenile court. State in Interest of N.C. , supra . If the juvenile court's findings are reasonable in light of the record reviewed in its entirety, the appellate court may not reverse, even though convinced that, had it been sitting as the trier of fact, it would have weighed the evidence differently. Id.
Although the juvenile court did not hear sworn testimony from the parties, the court did question the parents and Clarkes during the disposition hearing. Accordingly, deference is proper in these circumstances.
The parents complain on appeal that the juvenile court did not give them adequate time to work their case plans. The Department also essentially argued at the disposition hearing that awarding guardianship was premature and would prevent the parents from having the opportunity to work their case plans. Nevertheless, in terms of time, there was no legal impediment to the juvenile court awarding guardianship within a few months following adjudication of the children in need of care.
In State ex rel. C.M. v. Willis , 41,908 (La. App. 2 Cir. 12/27/06), 946 So.2d 316, writ denied , 2007-0190 (La. 2/16/07), 949 So.2d 413, this court affirmed the awarding of a guardianship three months after the children were removed from their home. This court noted that while determination of a permanent placement occurred in a relatively short time following the child in need of care adjudication, a disposition hearing may be conducted immediately after adjudication and must be conducted within 30 days. Because guardianship is a dispositional alternative and considered a permanent placement, it may be determined in a short time frame if in the best interest of the children.
In State in Interest of K.P. , 51,853 (La. App. 2 Cir. 11/15/17), 246 So.3d 627, the juvenile court awarded guardianship of three siblings at the same hearing when the court found the youngest child was in need of care, conducted a review of two of the children, and conducted a disposition hearing on the youngest child. Affirming the judgment, this court concluded that a permanent placement may be determined in a short time frame if it is in the best interest of the children. In reaching this conclusion, this court noted that *885 La. Ch. C. art. 678 allows disposition immediately after adjudication and mandates that it be conducted within 30 days after adjudication. Further, guardianship is a dispositional alternative under La. Ch. C. art. 681 and also considered a permanent placement.
Slater argues on appeal that the juvenile court was manifestly erroneous in finding that the guardianship was the least restrictive disposition as required by La Ch. C. art. 683(A). She contends that retaining the children in the Clarkes' custody and allowing the parents the opportunity to continue to work their case plans is a less restrictive dispositional alternative that is consistent with the circumstances of the case and the best interest of the children.
Although the juvenile court complimented the parents for being on the right path, we are mindful that, as this court asserted in State in the Interest of C.S. , 49,955 at p. 11, 163 So.3d at 199, "[m]ore than simply protecting parental rights, our judicial system is required to protect the children's rights to thrive and survive." Furthermore, La. Ch. C. art. 601 states that the health, safety, and best interest of the child shall be the paramount concern in all child in need of care proceedings.
The parents' recent progress in their battles against drug addiction is laudable, but it is still in the inchoate stages. Both parents have a significant drug history. Their drug use was so extensive that D.E. and H.E. tested positive for drugs, endangering their health and safety. Slater even used methamphetamine the week before H.E.'s birth. For his part, Echols attempted to thwart the Department's testing by submitting a substitute urine sample when the Department first became involved. He also tested positive for methamphetamine on his urine tests almost a month after removal.
There was never any objection to the suitability of the Clarkes as guardians at the disposition hearing. Rather, any objections focused on how guardianship would affect the parents' ability to regain custody. The Clarkes offered permanence and stability to the children by maintaining their custody since the continued custody hearing. H.E. had also been with the Clarkes at various other points in his five years. Donald persuaded the juvenile court that he and his wife offered the children the stability that they needed.
In reference to permanency hearings, La. Ch. C. art. 702(E) requires the court to determine whether the Department has made reasonable efforts to reunify the parent and child or to finalize the child's placement in an alternative safe and permanent home in accordance with the child's permanent plan. The juvenile court concluded in the judgment of guardianship that the Department had made reasonable efforts to prevent removal and reunify the family.
The guardianship was in the best interest of the children, was consistent with their needs, health, safety, and welfare, and was the most suitable of the least restrictive alternatives. Accordingly, we cannot conclude that the juvenile court was manifestly erroneous in awarding guardianship of D.E. and H.E. to the Clarkes.
Echols argues on appeal that the juvenile court did not comply with La. Ch. C. art. 721, which required a home study report. We note that the court ordered an ICPC home study when custody was granted to the Clarkes. While this study was apparently not completed or provided to the court if it was completed, the parents have not questioned the Clarkes' suitability as guardians.
The parents also argue on appeal that the juvenile court committed legal error by *886 granting guardianship without finding that the grounds of art. 722(A) were supported by clear and convincing evidence. That provision states that the mover has the burden of proving by clear and convincing evidence that
(1) The child has been adjudicated to be in need of care.
(2) Neither adoption nor reunification with a parent is in the best interest of the child.
(3) The child has resided for at least six months with the proposed guardian, unless the court waives the residence requirement for good cause.
(4) The proposed guardian is able to provide a safe, stable, and wholesome home for the child for the duration of minority.
That the juvenile court found the mover met his burden on the motion is implicit in the court's ultimate conclusion which we have already determined was not manifestly erroneous. The children were adjudicated in need of care on February 6, 2018. In the judgment of guardianship, the court stated that guardianship was in the children's best interest because it provided them with a safe and stable home. Although adoption was not considered, we note that no suitable person willing to adopt the children came forward. Moreover, guardianship is less restrictive than adoption as a permanent placement as the guardianship can be revisited by the juvenile court under art. 724. The judgment did not address the requirements that the child resided for at least six months with the proposed guardian unless the court waives the residence requirement for good cause. However, the children had resided with the Clarkes for approximately 2.5 months between the dates when the children were placed in their legal custody and when guardianship was awarded. Without specifying the exact periods, Donald testified that he had been in and out of D.E.'s life for five years. We also note that H.E. was not even six months old at the time of the dispositional hearing. Finally, there were no issues raised concerning the Clarkes' suitability as guardians to provide a safe, stable, and wholesome home for these children who had been directly exposed to drug abuse by both parents during their short lives.
La. Ch. C. art 710(A)(3) requires the court to make a finding of fact in a written judgment regarding whether an out-of-state placement is safe, appropriate, and otherwise in the best interest of the children. The juvenile court specifically stated in the judgment that guardianship was in the children's best interest and would provide the children with a safe and stable home.
A legal error occurs when a trial court applies incorrect principles of law and such errors are prejudicial. Evans v. Lungrin , 1997-0541, 1997-0577 (La. 2/6/98), 708 So.2d 731. Legal errors are prejudicial when they materially affect the outcome and deprive a party of substantial rights. Id. When such a prejudicial error of law skews the trial court's finding of a material issue of fact and causes it to pretermit other issues, the appellate court is required, if it can, to render judgment on the record by applying the correct law and determining the essential material facts de novo . Id.
On this record, we discern no legal error warranting de novo review.
Visitation
The parents also argue on appeal that the juvenile court erred in setting the visitation by allowing it to be arbitrarily determined by the Clarkes. This argument has merit.
La. Ch. C. art. 723(B) requires that the guardianship judgment address the frequency *887 and nature of visitation or contact between the children and their parents, as necessary to ensure the health, safety, and best interest of the children.
The juvenile court left the specific terms of visitation up to the Clarkes' discretion. We remand this matter to the juvenile court to set specific supervised visitation periods and conditions while taking into account the travel distance between the Clarkes' home in Dallas, Texas, and the parents' home in Shreveport.
CONCLUSION
At the appellants' costs, the judgment of guardianship is affirmed and the matter is remanded to the juvenile court to set specific supervised visitation.
AFFIRMED AND REMANDED.

Most of the facts come from the affidavit in support of an instanter order by Ashlei Kimble with the Louisiana Department of Children and Family Services, and from a letter to the trial judge from the Department.

A motion for guardianship may be filed by the attorney for the child. La. Ch. C. art. 720(A).